**B. J. DIAMOND, Plaintiff-Appellee,**

v.

**TERMINAL RAILWAY ALABAMA STATE DOCKS, An Agency of The State of Alabama, Defendant-Appellant.**

**No. 27588.**

United States Court of Appeals
Fifth Circuit.

Jan. 7, 1970.

Willis C. Darby, Jr., Mobile, Ala., MacDonald Gallion, Atty. Gen., State of Alabama, for defendant-appellant.

Al G. Rives, Clarence M. Small, Jr., Birmingham, Ala., Warren Finch, Mobile, Ala., for plaintiff-appellee; Rives, Peterson, Pettus, Conway & Burge, Birmingham, Ala., of counsel.

Before BELL, AINSWORTH and CARSWELL, Circuit Judges.

AINSWORTH, Circuit Judge:

Terminal Railway Alabama State Docks, a "carrier" subject to the provisions of the Railway Labor Act,[1] appeals from the District Court's judgment enforcing against it an award and order of the National Railroad Adjustment Board Third Division.[2] The Third Division issued this award and order in settlement of a dispute between Terminal Railway and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees. This dispute involved the carrier's dismissal of B. J. Diamond, a Brotherhood member, from its service on September 13, 1963. In its order the Third Division directed Terminal Railway to restore Diamond to its service with his seniority and all other rights unimpaired, to compensate him for all wage and other losses he sustained as a result of his dismissal, and to clear his record of all charges made against him which may have been there recorded. After Terminal Railway failed timely to comply with this order, Diamond petitioned the District Court for enforcement.[3] In response to Diamond's petition, Terminal Railway requested that the District Judge set aside the Adjustment Board award and coun-

---

1. Railway Labor Act §§ 1 First, 2–3, 45 U.S.C. §§ 151 First, 151a–153 (1964), as amended (Supp. IV, 1968).

2. The Third Division has jurisdiction over disputes involving clerical employees such as petitioner in this case. Railway La-

bor Act § 3 First (h), 45 U.S.C. § 153 First (h) (1964).

3. Railway Labor Act § 3 First (p), 45 U.S.C. § 153 First (p) (1964), as amended (Supp. IV, 1968).

terclaimed against Diamond for $50,000 in actual and exemplary damages. The carrier based its counterclaim upon Diamond's allegedly deliberate and negligent failure to follow proper demurrage accounting procedures while serving as the Office Manager of Terminal Railway. Thereafter the District Court granted a partial[4] summary judgment enforcing the award and order. The Court also granted Diamond's motion to strike the carrier's counterclaim.

On this appeal Terminal Railway contends (1) that the award of the Adjustment Board is without foundation in reason or fact, (2) that the monetary provision of the award was improperly computed, and (3) that its counterclaim should not have been struck. We conclude that the judgment of the District Court was correct and must be affirmed.

Briefly stated, the undisputed facts of this case are as follows. For twenty-six years Diamond was employed in various positions by Terminal Railway. During these years he held seniority as a clerk under the collective bargaining agreement [hereinafter referred to as the "Clerks' Agreement"] in effect between Terminal Railway and the Brotherhood of Railway and Steamship Clerks. In May 1963 he was appointed to the "official" position of Office Manager. As Office Manager he was responsible for the carrier's demurrage accounts. That this position was excepted from the protection of the Clerks' Agreement did not affect his seniority rights under the Agreement. On August 21, 1963, Terminal Railway notified Diamond that the position of Office Manager was abolished effective that date. On August 26, 1963, the Chief Clerk of the carrier issued a notice stating that Diamond had exercised his seniority rights under the Clerks' Agreement to displace a junior employee in the protected position of Order Clerk. Diamond, however, had become anathema to Terminal Railway. By a letter dated September 13, 1963, the carrier summarily dismissed

him from its service. This letter gave as the reason for Diamond's discharge that Diamond had wilfully and negligently failed properly to assess and collect demurrage. So advised, Diamond was out of work.

Terminal Railway concedes that it violated Rule 17(a) of the Clerks' Agreement in dismissing Diamond without previously conducting a hearing on the charges it made against him. Rule 17, entitled "Investigation and Discipline," reads in part:

"17(a) Filing Charges and Hearing —Employes who have been in service more than 60 days will not be * * * discharged without just cause. When such action becomes necessary, the accused shall be duly apprised in writing, within ten days after knowledge of occurrence, of the charge that is brought against him, and within ten days after such notification the employe shall be given a full hearing or investigation by the proper officer of the railroad, at which time all evidence in the case shall be submitted. A proper and full record of the case will be kept and authenticated by both parties and made the basis for any discipline that may be administered, or basis for an appeal to a higher officer. If the offense is considered sufficiently serious the employe may be suspended during the interim."

On October 11, 1963, the Brotherhood requested that the carrier reinstate Diamond and pay him for time lost. The Brotherhood based this request on the ground that Diamond had been dismissed in violation of Rule 17(a). Terminal Railway refused, stating that the request for reinstatement and back pay had not been timely made. It took this position on the basis of Rule 18(b) of the Clerks' Agreement. Rule 18(b), entitled "Filing Local Grievances," provides that

"Any employe who considers himself unjustly treated, or that he has

just grounds for claim or grievance, shall have the right of hearing and appeal in similar manner as is provided in Rule 17, provided written request is made to his immediate superior by the employe or his representative within seven days after cause for the complaint. This written grievance shall constitute the basis for investigation, trial or hearing."

On October 23, 1963, the carrier, under protest and without prejudice to its position that no hearing was then warranted, offered to hold a hearing in which it would "prove each and every charge" against Diamond. This offer was rejected by the Brotherhood. On December 13, 1963, the carrier again offered to conduct a hearing for the purpose of proving its charges against Diamond. This offer was also rejected. Finally, in September 1964, the Brotherhood filed an Ex Parte Submission with the Adjustment Board Third Division.

After reviewing the facts, the Third Division concluded:

"There is no question that the Carrier had every right to dismiss [Diamond] from its service as Office Manager, but in order to dismiss him from its service as a clerical employe it must observe the provisions of the Current Agreement. The Carrier may not shift the burden of initiating a hearing of its charges by arguing it was the duty of [Diamond] to request a hearing as provided in Rule 18(a) [*sic*]. In this case the Carrier dismissed [Diamond] from a clerical seniority position by its letter of September 13, 1963. It failed to comply with the provisions of Rule 17(a), which obligated it to initiate a hearing on the charges made against [Diamond], and in so doing it acted in a capricious and arbitrary manner. In the circumstances found a sustaining award is indicated and [Diamond] shall be restored to the service of the Carrier with seniority and all other rights unimpaired; he shall be compensated for all wage and other losses sustained account of his dismissal;

and his record shall be cleared of all charges or allegations which may have been recorded thereon as a result of the violations with which he was charged."

In the court below, the District Judge computed the monetary provision of the Adjustment Board award as follows. From the amount ($33,853.77) Diamond would have earned had he been continuously employed as a clerk by the carrier from the date of his dismissal to the date of his reinstatement, the District Judge subtracted the amount ($7,687.51) he actually earned from employment by others during this period. The remainder with interest of 6 per cent ($29,586.-86) was adjudged due Diamond from Terminal Railway. In addition, the District Judge held that the carrier possessed a lien on the amount the Railroad Retirement Board paid as unemployment benefits to Diamond during the relevant period and awarded attorneys' fees to Diamond's lawyers. The District Judge considered immaterial to his computation of the monetary award the issues whether Diamond had failed to make reasonable efforts to seek employment and whether he had withdrawn himself from the employment market.

### I.

Within the limits of our reviewing power, we first consider Terminal Railway's contention that the District Court erred in enforcing the award of the Adjustment Board. For reasons that follow, we hold that the District Court properly defined the narrow standard of review permitted by the Railway Labor Act and correctly applied that standard in this case.

The Adjustment Board is an expert body designed to settle "minor" disputes that arise from day to day in the railroad industry. Gunther v. San Diego & Arizona Eastern Ry. Co., 382 U.S. 257, 261, 86 S.Ct. 368, 370, 15 L. Ed.2d 308 (1965). The provisions of the Railway Labor Act dealing with the Adjustment Board are to be considered as "compulsory arbitration in this limit-

ed field." Brotherhood of Railroad Trainmen v. Chicago R. & I. R. Co., 353 U.S. 30, 39, 77 S.Ct. 635, 640, 1 L.Ed.2d 622 (1957); *see* Gunther v. San Diego & Arizona Eastern Ry. Co., 382 U.S. 257, 262, 86 S.Ct. 368, 371, 15 L.Ed.2d 308 (1965). The federal courts do not sit as super arbitration tribunals in suits brought to enforce awards of the Adjustment Board. They may not substitute their judgments for those of the Board divisions. They need not inquire whether substantial evidence supports the Board's awards. Under the Railway Labor Act, as amended in 1966, Pub.L. No. 89–456, 80 Stat. 208, the range of judicial review in enforcement cases is among the narrowest known to the law. Board awards are "final and binding" upon the parties.[5] In court the findings and order of the Board are "conclusive."[6] Judicial review of orders is limited to three specific grounds: (1) failure of the Board to comply with the Act, (2) fraud or corruption, or (3) failure of the order to conform, or confine itself, to matters within the Board's jurisdiction. Railway Labor Act § 3 First (p), 45 U.S.C. § 153 First (p) (1964), as amended (Supp. IV, 1968). Only upon one or more of these grounds may a court set aside an order of the Adjustment Board.

■ In this case we are concerned with whether the Board's award exceeded its jurisdiction. This Court recently had occasion to consider when an award made "final and binding" by the Railway Labor Act is not final and binding, but may be set aside by a court because the Board did not have authority to make it. That case, Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co., 5 Cir., 1969, 415 F.2d 403, is controlling here. We there stated:

"* * * In the arbitration context, an award 'without foundation in reason or fact' is equated with an award that exceeds the authority or

jurisdiction on the arbitrating body. To merit judicial enforcement, an award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement. The arbitrator's role is to carry out the aims of the agreement, and his role defines the scope of his authority. When he is no longer carrying out the agreement or when his position cannot be considered in any way rational, he has exceeded his jurisdiction. * * *"

Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co., 5 Cir., 1969, 415 F.2d 403, 411–412. An Adjustment Board order is not "conclusive," we then determined, when it is "so unfounded in reason and fact, so unconnected with the wording and purpose of the collective bargaining agreement as to 'manifest an infidelity to the obligation of the arbitrator.'" *Id.* at 415, citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). See also Gunther v. San Diego & Arizona Eastern Ry. Co., 382 U.S. 257, 261, 86 S.Ct. 368, 371, 15 L.Ed.2d 308 (1965); Safeway Stores v. American Bakery & Con. W. I. U., Local 111, 5 Cir., 1968, 390 F.2d 79.

■ Under the circumstances of this case, therefore, the District Court was required to enforce the Adjustment Board's award unless that award is "without foundation in reason or fact." This test of the Board's jurisdiction is not whether the reviewing court agrees with the Board's interpretation of the bargaining contract, but whether the remedy fashioned by the Board is rationally explainable as a logical means of furthering the aims of that contract. Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co., 5 Cir., 1969, 415 F.2d 403, 412. Terminal Railway concedes that it violated Rule 17(a) of the

---

5. Railway Labor Act § 3 First (m), 45 U.S.C. § 153 First (m) (1964), as amended (Supp. IV, 1968).

6. Railway Labor Act § 3 First (p), 45 U.S.C. § 153 First (p) (1964), as amended (Supp. IV, 1968).

Clerks' Agreement by dismissing Diamond without previously conducting a hearing. It contends, however, that the Board's award is without foundation in reason or fact for three reasons: (1) the Board failed to give effect to Rule 18 of the Clerks' Agreement; (2) the proper remedy for a carrier's violation of Rule 17(a) is a hearing, which Terminal Railway offered, rather than reinstatement of the dismissed employee; and (3) the requirement that Diamond be reinstated with a clear record is irrational because it deprives the carrier of grounds for now dismissing him.

■ We need tarry only momentarily with the carrier's first contention. The Board's conclusion that Rule 18(b) was inapplicable to this case of an employee summarily dismissed in violation of Rule 17(a) is a reasonable construction of the Clerks' Agreement. Rule 18, entitled "Grievances, Appeal, Rulings, and Local Agreements," provides for hearings "in similar manner as is provided in Rule 17." Rule 18 appears to be addressed to nondisciplinary disputes. Rule 17, on the other hand, is addressed solely to disciplinary matters. From the Agreement, it may be rationally concluded that Rule 18(b) does not require a dismissed employee to make a written request for the very hearing to which he was entitled before discharge and without request under Rule 17(a). Therefore, the Board's construction of the bargaining contract may not be disturbed.

■ Similarly, we cannot say that the Board's order requiring Diamond's reinstatement is without foundation in reason or fact. That the Board has merely ordered a hearing in other contexts does not compel the conclusion that the award in this case exceeded the Board's jurisdiction. The Supreme Court has described the arbitrator's role as follows:

"When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. * * * "

United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). No less than the private arbitrator, the Adjustment Board must have flexibility to deal with the variety of situations it encounters in arbitrating "minor" disputes. The courts, therefore, must be careful not to restrain the Board in a strait jacket of precedent under the guise of determining whether the Board exceeded its jurisdiction in making a particular award. So long as the Board's decision is drawn from the "essence" of the bargaining contract, we cannot say that once the Board has fashioned a particular remedy for a particular contract violation, any other remedy fashioned in the future is beyond the Board's authority.

Diamond's reinstatement is rationally explainable as a logical means of furthering the aims of the Clerks' Agreement. Rule 17(a) entitled him to a full hearing on the charges made against him before a decision on these charges was made. He never waived his right to such a hearing. Rule 17 further provides that any disciplinary action—other than suspension during the course of the hearing in serious cases—shall be based upon the record made at the hearing. In this case, the only type of hearing offered by Terminal Railway was not in keeping with either the letter or the

purpose of this contract provision. Under the circumstances here, it is not unreasonable to suppose that a hearing at this late date would be insufficient to insure the effectiveness of that provision as a safeguard of employees' industrial rights. Having found that the reinstatement order can be so explained, we may inquire no further into this portion of the Board's award.

■ Terminal Railway next attacks the award requirement that Diamond's record be cleared of the 1963 charges involving improper demurrage accounting. The carrier claims that this requirement constitutes a jurisdictional defect in the award because it cannot now hold a Rule 17 hearing and then dismiss Diamond once again. We do not read the Board's order to give Diamond a vested right to a clerical job at Terminal Railway, however poor an employee he may be or the carrier may deem him to be. Instead, we consider the requirement that his record be cleared to be reasonably necessary to provide substance to the order that he be reinstated. In view of the nature of the 1963 charges, we do not find that inclusion of this requirement in the award constitutes an abuse of authority.

II.

■ After the District Court granted Diamond's motion for a partial summary judgment enforcing the Board's order, the parties were bound by the Board's decision that Diamond was entitled to compensation for "all wage and other losses sustained account of his dismissal." It was then the function of the District Court to determine what this language meant. Sweeney v. Florida East Coast Railway Company, 5 Cir., 1968, 389 F.2d 113, 115. The District

Court held as a matter of law that Diamond should receive the amount he would have earned as a clerk less his actual interim earnings. Terminal Railway contends that a deduction should also have been made for Diamond's failure properly to mitigate his damages. This contention is unsound. If the Board had meant to subtract amounts Diamond might have earned but did not, it would have said as much. Instead, it awarded compensation for the losses that Diamond "sustained." As a result of the 1966 amendments to the Railway Labor Act, Terminal Railway did not have a right to a new trial on the issue of damages, and the monetary provision of the award was conclusive upon it absent a jurisdictional defect, fraud, or "unstatutoriness." Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co., 5 Cir., 1969, 415 F.2d 403, 410–411; Sweeney v. Florida East Coast Railway Company, 5 Cir., 1968, 389 F.2d 113. We conclude that the District Court correctly enforced the monetary provision of the Board award and correctly determined the amount due Diamond.

III.

In its counterclaim Terminal Railway alleged that Diamond breached his employment contract by wilfully failing to follow specific instructions given to enable the carrier to comply with the Elkins Act, 49 U.S.C. §§ 41–43 (1964), thereby causing the carrier to lose certain revenue. Terminal Railway here contends that the District Court erred in striking this counterclaim. It argues that this claim should not have been excluded because it was either compulsory under Fed.R.Civ.P. 13(a) [7] or permissive under Fed.R.Civ.P. 13(b) [8] and based upon independent grounds of federal jurisdiction.

7. Fed.R.Civ.P. 13(a) reads in part: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *."

8. Fed.R.Civ.P. 13(b) reads: "A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

■ A counterclaim is compulsory under Rule 13(a) if it is "logically related" to the claim upon which the opposing party is suing. *See* 1A Barron & Holtzoff, Federal Practice and Procedure § 394, at 573 (Wright rev.ed.1961). As the Third Circuit has put it,

" * * * a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. When multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently."

Great Lakes Rubber Corporation v. Herbert Cooper Co., 3 Cir., 1961, 286 F.2d 631, 634.

■ In this case we discern no logical relation between the carrier's counterclaim and Diamond's petition for enforcement of the Adjustment Board award and order. Plaintiff's petition required the trial court to consider, and the parties to argue, only the carrier's jurisdictional defense to enforcement of the award and the meaning of the monetary provision in that award. The Railway Labor Act provides that the petitioner in suits brought to enforce Board orders is not liable for district court costs and is entitled to a reasonable attorney's fee if he prevails.[9] These provisions would not have applied to Terminal Railway's claim. This claim sought damages without regard to whether the award was enforceable. Here separate trials of the parties' claims would involve substantially different issues and efforts by the parties and the court. *See* Brotherhood of Railroad Trainmen v. Denver & R. G. W. R. Co., D.Colo., 1962, 31 F.R.D. 297, 299. Indeed, if the parties were allowed to litigate their claims in one lawsuit, the trial court's management of the action would be further complicated because it would be necessary to allocate costs and fees between that part of the action covered by the Railway Labor Act and that part not so covered. Therefore, we conclude that the District Court was not required to allow Terminal Railway to assert its counterclaim under Rule 13(a).

Rule 13(b) permits independent, unrelated claims to be raised in order that all points of controversy between litigants may be resolved in one trial. A permissive counterclaim must be supported by its own grounds of federal jurisdiction, however, or it will be excluded from the case. We do not read Terminal Railway's counterclaim to state such grounds. Accordingly, we conclude that this claim was properly excluded for want of subject matter jurisdiction.

Affirmed.

---

9. Railway Labor Act § 3 First (p), 45 U.S.C. § 153 First (p) (1964), as amended (Supp. IV, 1968).