See also, 390 F.Supp. 579.

**Elouise JONES et al., on behalf of themselves and all other persons similarly situated, Plaintiffs,**

**v.**

**The UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD) et al., Defendants.**

**Civ. A. No. 74–2628.**

United States District Court,
E. D. Louisiana.

May 2, 1975.

Joseph W. Thomas and Anthony W. Skidmore, John M. Blanchard, Okla

Jones, II, New Orleans, La., for plaintiffs.

Michaelle F. Pitard, A. P. Kopera, II, New Orleans, La., for U. S. A. & HUD.

Robert P. Chatelain, New Orleans, La., for Koffman and Parkchester Realty Corp.

## ORDER AND OPINION

ALVIN B. RUBIN, District Judge:

In an order dated February 6, 1975, the court entered a decree for certain immediate relief, based upon the evidence adduced at several hearings in this matter and ordered an environmental clearance study prepared by the Department of Housing and Urban Development. While that order disposed of many of the motions before the court, by dealing with the matters of greatest urgency, several issues were taken under submission. The plaintiffs have now filed a motion asking for equitable relief in lieu of an order requiring the Secretary to file an environmental impact statement pursuant to the National Environmental Policy Act, 42 U.S.C. § 4332(c). In deciding this motion, the court must necessarily decide the matters under submission and determine what final relief is appropriate in this case.

At the hearing on this matter held February 5, 1975, the court suggested to the parties that the Secretary might be derelict in her duties under the National Housing Act, 42 U.S.C. § 1441, if she permitted the private landowners—so long in default under their mortgage—to sell the property and reap a profit. By letter dated March 26, 1975, and filed in the record, counsel for the United States has informed the court that the private owners have been placed in default, and that foreclosure proceedings will begin in June, 1975. This issue, upon which the court reserved ruling, is therefore moot. So long as the Secre-

tary proceeds with the plan outlined in counsel's letter to the court, it will remain so. Any delay in instituting or pursuing foreclosure proceedings would, however, be cause for re-examining the issue.

The plaintiffs have now abandoned their request that the Secretary be required to file an environmental impact statement before the demolition of Parkchester begins, for the very good reason that the demolition is well under way, pursuant to the court's order. Although the issue is now largely moot, it would be best to bring it to a more reasoned close, both· to explain why the court did not consider the NEPA statement an urgent matter, requiring immediate relief, and to clarify the future rights of the parties.

█ Under the standards outlined by the Fifth Circuit in Save Our Ten Acres (SOTA) v. Kreger, 5 Cir. 1973, 472 F.2d 463, a federal district court should order that an environmental impact statement be filed if the court finds, on the basis of all the evidence, that any single human environmental factor would be adversely affected by the proposed project. In the opinion dated December 12, 1974, the court was unable to conclude that a statement was not required. Since that time, however, the Secretary has made an environmental clearance study and reported its results to the court. It concludes that no impact statement need be filed, since the demolition of Parkchester would not significantly degrade any factor in the human environment.

█ The court has carefully reviewed this study, and had done so prior to the February 6 order. The study supports the Secretary's conclusion, and the plaintiffs have not introduced other evidence tending to demonstrate that demolition will significantly and adversely affect any factor in the human environment. The evidence demonstrates the contrary: the Parkchester buildings could not have

been economically rehabilitated; their continued existence is a danger to the community; low income housing units available would absorb the actual, human dislocation caused by demolition of the project. For these reasons, no environmental impact statement need be filed with respect to the abandonment and demolition of the project.

The proposed construction of a mixed use, "luxury" apartment and shopping center complex, however, is another matter. Should the Secretary approve this kind of use of the land, other considerations might—or might not—make an impact statement necessary. It is clear from the letter filed by counsel for the United States, however, that the Secretary has not approved this use of the land, and does not now plan to do so.

The plaintiffs have asked the court to order the defendant Secretary to give them "adequate notice and every opportunity to meaningfully participate" in any future plans for rehabilitating the Parkchester structures or developing the property. It is not clear just what will happen to the Parkchester property, although it will, if HUD successfully forecloses on the mortgage, become public property. If HUD acquires it and develops a plan for its use, it may be that these plaintiffs have the residual right, or the general public may have the right, to require the filing of an environmental impact statement, or perhaps to require the Secretary to fulfill some duty under the Civil Rights Acts.

█ The court has concluded that the Secretary has not breached these duties in this case, and a future breach is not lightly to be presumed. It should be enough to protect these plaintiffs that the Secretary be required to give counsel for the plaintiffs notice of any proposed sale of the Parkchester property, any change in its use, or any proposed development of it. The plaintiffs' right to participate in that planning may then be

adjudicated, if participation is in fact denied them.

The Koffmans, defendants in this suit and owners of the Parkchester property, have two counterclaims pending before the court. They seek to recover back rent they claim class members owe them, in the amount of $165,088.43 plus $41,272.10 attorneys' fees, and they claim that the plaintiffs have violated their civil rights by interfering with the use and disposition of their property. They ask damages for this second claim in the amount of $3,100,000.

■ Rule 23 permits class actions by way of offense or defense: "One or more members of a class may sue or be sued as representative parties on behalf of all . . . ." The fact that this action has been certified as a class action with respect to some claims does not, however, mean that another class action, against the same class but involving wholly different issues, is necessarily appropriate. I mention this threshold problem only to disclaim any resolution of it, for the counterclaims have what seem to be other fatal flaws.

Neither of the parties concerned with these counterclaims have paid much attention to them during the course of this lawsuit; the record contains only the counterclaims themselves and an answer filed within the last week. The evidence adduced relevant to them at the hearings in this case has come out only incidentally. I deal with the counterclaims now in an effort to focus the parties' attention on them, because my own examination of them leads me to believe that the first is not within the jurisdiction of this court and that the second is not viable.

■ The first claim, for back rent and attorneys' fees, could not be brought independently in federal court, since no independent jurisdictional basis for it is alleged and none has been demonstrated. Consequently, it is within the subject matter jurisdiction of this court only if it is a compulsory counterclaim under Rule 13 of the F.R.Civ.P. Revere Copper & Brass Inc. v. Aetna Casualty & Surety Co., 5 Cir. 1970, 426 F.2d 709.

Rule 13(a) provides that a counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Although just what this phrase means is not clear, Professor Wright outlines what he considers the best—and broadest—test:

> According to this test, any claim a party has against an opposing party that is logically related to the claim being asserted by the opposing party and that is not within the exceptions listed in Rule 13(a) is a compulsory counterclaim. The hallmark of this approach is its flexibility. Basically, it allows the court to apply Rule 13(a) to any counterclaim that from an economy or efficiency perspective could be profitably tried with the main claim. 6 Wright & Miller, Federal Practice & Procedure § 1410 at 46–47.

The Fifth Circuit has applied this test, and in Diamond v. Terminal Railway Alabama State Docks, 5 Cir. 1970, 421 F. 2d 228, outlined it in this fashion:

> A counterclaim is compulsory under Rule 13(a) if it is "logically related" to the claim upon which the opposing party is suing. *See* 1A Barron & Holtzoff, Federal Practice and Procedure § 394, at 573 (Wright rev. ed. 1961). As the Third Circuit has put it,
>
> > " * * * a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. When multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and con-

siderations of convenience and economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently."

Great Lakes Rubber Corporation v. Herbert Cooper Co., 3 Cir., 1961, 286 F.2d 631, 634.

In *Diamond*, the court held that a counterclaim was not compulsory, finding that "separate trials of the parties' claims would involve substantially different issues and efforts by the parties and the court." 421 F.2d at 236.

Applying this standard, the counterclaim for back rent and attorneys' fees is not compulsory, and hence not within the jurisdiction of this court. The plaintiffs' basic grievance concerned the relationship between the Koffmans and the Department of Housing and Urban Development. They sought to demonstrate the Parkchester complex was substandard because of racial discrimination and because of HUD's failure to police the owners, and they claimed that HUD and the Koffmans were engaged in a racially discriminatory scheme to phase out the apartments. Thus, they claimed a right to enforce the regulatory agreement to which the Koffmans and HUD were parties as well as a right to compel HUD to fulfill certain statutory and constitutional duties. The plaintiffs did not, however, invoke obligations owed to them under their leases.

The evidence adduced in support of these claims was different from the evidence that would be brought out in a hearing on the counterclaim for back rent and attorneys' fees. It would be necessary to hear mostly new witnesses (including, presumably, each of the class members who had any individual defense) on new issues: who has and has not paid rent, for how long, and why? Because both the focus of and the evidence surrounding the main claim and the first counterclaim differ so greatly, the claim for back rent and attorneys' fees is not a compulsory counterclaim. It is thus not within the ancillary jurisdiction of the court, and must be dismissed.

I reach this result after considering an issue as yet unnoticed or unbriefed by either party. If the defendants have any authority that they believe commands a different result, counsel may bring it to my attention, within 10 days.

The second counterclaim, for deprivation of civil rights, has not been seriously pressed. On its face it does not seem to reveal any state action or racial motivation to support a claim for relief under 42 U.S.C. § 1982. Nor is there any evidence now of record from which I could conclude that the defendants' allegations are true and that they have been damaged in the amount they claim. Most of the damages they seek on this claim are as a result of the fact that they have been and will be delayed in or prevented from disposing of their property. This delay, however, as well as the possible frustration of their plans, are attributable to this lawsuit and the actions of HUD; while the court has not awarded full relief to the plaintiffs, their claims do not seem so frivolous that they ought to respond in damages for making them.

But I have examined this claim, like the first counterclaim, only on the basis of an incomplete record and without memoranda from counsel on this issue. If the Koffmans intend to press this claim for damages for deprivation of civil rights, they shall notify the court of their intention within 10 days of the date of this opinion and order and the matter will be promptly set for trial. If they fail to do so, this claim will be dismissed for failure of proof.

Finally, counsel for the plaintiffs in this matter have moved for an award of attorneys' fees to them. As counsel rec-

ognize, 28 U.S.C. § 2412 permits a judgment in actions against the United States only "for costs, . . . but not including the fees and expenses of attorneys." Thus, plaintiffs can claim attorneys' fees only against the private defendants, the Koffmans.

■ But the plaintiffs did not succeed in proving their case against the Koffmans. The limited relief the court entered was against the Department of Housing and Urban Development, for its initial failure to meet statutory duties, and only incidentally involved the Koffmans. In Sierra Club v. Lynn, 5 Cir. 1974, 502 F.2d 43, the Fifth Circuit reversed the district court's order granting attorneys' fees in a situation similar to this one. See also Poirrier v. St. James Parish Police Jury, C.A.No. 73–2104, October 25, 1974. Although the plaintiffs in Sierra Club v. Lynn had "performed a valuable public service in bringing this action which directly caused HUD's full compliance with NEPA," the court also found that the private party "successfully defended this lawsuit." 502 F.2d at 66. The court concluded: "In the absence of proof that the private party controlled the government agency's actions or caused its default, it cannot be cast in judgment as a result of the agency's shortcomings." 502 F.2d at 66. It would serve no purpose to repeat Judge Clark's thorough discussion of the law in this area; it is clear that the Fifth Circuit's conclusion governs this case, and the motion for attorney's fees must accordingly be denied.

It is accordingly ordered that the Secretary of Housing and Urban Development give notice to counsel for the plaintiffs of any proposed change in use, sale, or other development of the Parkchester property so long as the Secretary shall have control of the property.

It is further ordered, that the obligation imposed by this decree shall lapse after three years, unless renewed for cause shown.