Victor R. POLEWSKY, Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION, Defendant.

Civ. A. No. 90–200.

United States District Court,
D. Vermont.

Nov. 30, 1992.

Richard E. Davis, Jr., Richard E. Davis
Associates, Inc., Barre, VT, for plaintiff.

Robert B. Hemley, Gravel and Shea, Burlington, VT and Jonathan I. Saperstein, Washington, DC, for defendant.

## OPINION AND ORDER

PARKER, Chief Judge.

### I. Introduction

On July 27, 1990 petitioner filed a petition to vacate or set aside an arbitration award in favor of the defendant issued by the National Railroad Adjustment Board ("the NRAB"), a tribunal established under the Railway Labor Act, 45 U.S.C. § 153 First ("RLA"), to arbitrate disputes arising under collective bargaining agreements. Petitioner claimed that the NRAB had exceeded its jurisdiction by (1) hearing the case on its merits despite the failure of defendant National Railroad Passenger Corporation ("Amtrak") to comply with the time limits set forth in Rule 25 of the collective bargaining agreement between petitioner's union, United Transportation Union ("the UTU") and defendant,[1] and (2) considering evidence of petitioner's disciplinary record while employed by carriers and in crafts outside the NRAB's jurisdiction. Defendant moved for summary judgment and petitioner made a cross-motion for summary judgment.

On October 11, 1991, this court issued an Opinion and Order ruling that defendant was entitled to summary judgment in its favor, 776 F.Supp. 860. On June 5, 1992, the United States Court of Appeals for the Second Circuit granted petitioner's motion for remand to this court, based on two grounds: (1) the district court clerk's failure to obtain a certified copy of the record of proceedings from the NRAB in violation of 45 U.S.C. § 153 First (q)[2]; and (2) the district court did not consider or rule upon petitioner's contention that the NRAB exceeded its jurisdiction by considering petitioner's prior employment record, in violation of 45 U.S.C. § 153 First (h).

After the Second Circuit remanded the case to this court, petitioner filed a variety of motions. Petitioner filed a Motion for Status Conference (paper # 23 in court's docket) for the purpose of determining whether the parties would be able to file additional pleadings. Petitioner then filed the Affidavit of Victor R. Polewsky, (paper # 26 in court's docket), a Motion to Vacate Judgment (paper # 27 in court's docket) of this court's Opinion and Order of October 11, 1991 and a Motion for Leave to Amend Petition to Vacate and Set Aside Arbitration Award of National Railroad Adjustment Board First Division (paper # 28 in court's docket). Finally, petitioner filed a Motion for Leave to Amend Memorandum in Opposition to Defendant's Motion for Summary Judgment (paper # 29 in court's docket) and the Amended Memorandum in Opposition to Defendant's Motion for Summary Judgment (paper # 30 in court's docket). Defendant has communicated its opposition to the submission of any additional pleadings or briefs but has no objection to the motion for a status conference (papers # 25 and # 31 in court's docket).

On remand, this court grants petitioner's motions to vacate the Opinion and Order of October 11, 1991 (paper # 27 in court's docket), to amend its petition to vacate the NRAB award (paper # 28 in court's docket), and to amend its memorandum in opposition to summary judgment (paper # 29 in court's docket). Now before the court are the defendant's motion for summary judgment (paper # 8 in court's docket) and petitioner's cross-motion for summary judgment (paper # 15 in court's docket).

### II. Facts

On June 2, 1988, Amtrak received a written complaint from a passenger, Dr. Dutch,

---

**1.** Rule 25 of the collective bargaining agreement between Amtrak and UTU provides, in part, that:

Trials on matters which do not involve employees being held out of service will be scheduled to begin within twenty (20) days from the date of management's first knowledge of such matters. If not so scheduled, the charge will become null and void.

**2.** Section 153 First (q) provides that when an aggrieved employee files a petition for review of an NRAB decision with the district court, "[a] copy of the petition shall be forthwith transmitted by the clerk of the court to the Adjustment Board. The Adjustment Board shall file in the court the record of the proceedings on which it based its action."

alleging that petitioner had behaved in a rude and discourteous manner. On June 2, 1988, a Lead Service Attendant who had witnessed petitioner's remarks on Train No. 94 reported the incident to defendant's Transportation Superintendent. At the Superintendent's request, the Attendant submitted a written report to him on June 15, 1988. On June 27, 1988, Amtrak charged petitioner by letter with having acted in a rude and discourteous manner towards a passenger on May 28, 1988, while he worked aboard Train No. 94. An investigatory hearing was scheduled for June 30, 1988 to determine the circumstances surrounding the incident aboard Train No. 94.

After postponements, the Investigation was held on July 29, 1988. Petitioner was represented at the hearing by the UTU. Pursuant to the collective bargaining agreement, petitioner and his representative had the opportunity to present evidence and testimony on petitioner's behalf and to cross-examine adverse witnesses. The hearing officer who conducted the investigatory hearing determined that petitioner had behaved in a rude and discourteous manner. In light of these findings and petitioner's past disciplinary record, Amtrak terminated petitioner by letter on August 23, 1988.

After unsuccessfully appealing petitioner's termination to Amtrak officials, the UTU appealed petitioner's discharge to the NRAB, First Division.[3] Based upon the record presented, including the aggrieved passenger's testimony, the NRAB held that petitioner had "performed his duties in a rude and discourteous manner toward [the passenger] interfering with her consumption of her meal and providing ... ample justification for her complaint...." As a result, the NRAB upheld petitioner's termination.

Petitioner seeks to have the NRAB order vacated by this court. Defendant has moved for summary judgment and plaintiff has made a cross-motion for summary judgment.

## III. Discussion

Summary judgment should be rendered for the moving party if the court finds that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In considering the motion, the court's responsibility is not to resolve disputed factual issues, but to determine whether there is a genuine issue to be tried. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). The court must draw all reasonable inferences in favor of the non-moving party and only grant summary judgment for the moving party if no reasonable trier of fact could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986); *Knight v. United States Fire Ins., Co.*, 804 F.2d 9, 11 (2d Cir.), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1986).

### A. The Scope of Review of NRAB Decisions is Extremely Narrow

The finality and binding nature of NRAB decisions, 45 U.S.C. § 153 First (m), warrants that judicial review of such award decisions is quite limited. *Coppinger v. Metro–North Commuter R.R.*, 861 F.2d 33, 36 (2d Cir.1988); *DeClara v. Metropolitan Transp. Auth.*, 748 F.Supp. 92, 94 (S.D.N.Y.1990), *aff'd*, 930 F.2d 911; *Decker v. CSX Transp., Inc.*, 688 F.Supp. 98, 110 (W.D.N.Y.1988), *aff'd*, 879 F.2d 990, *cert. denied*, 493 U.S. 1020, 110 S.Ct. 720, 107 L.Ed.2d 740 (1990). The NRAB (or arbitration panels designated by the NRAB pursuant to 45 U.S.C. § 153 First (i) and § 153 Second) has primary and exclusive jurisdiction over all employee grievances involving the interpretation or application of collec-

---

**3.** 45 U.S.C. § 153 [First] (h) divides the NRAB into four divisions which will conduct independent proceedings to resolve disputes based on their jurisdiction as created by this section. The First Division has jurisdiction over disputes involving "train and yard service employees of carriers; that is engineers, firemen, hostlers, and outside hostler helpers, conductors, trainmen, and yard service employees." Petitioner was employed as a conductor at the time of the incident with Dr. Dutch and his subsequent termination. Review by the NRAB was before the First Division in accordance with its jurisdiction.

tive bargaining agreements (so-called "minor disputes"). *Union Pacific v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978), *reh'g denied*, 439 U.S. 1135, 99 S.Ct. 1060, 59 L.Ed.2d 98; *Maine Cent. R.R. Co. v. United Transp.*, 787 F.2d 780, 781 (1st Cir.), *cert. denied*, 479 U.S. 848, 107 S.Ct. 169, 93 L.Ed.2d 107 (1986). There are strong policy reasons for such narrow judicial review, since the effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations. *Union Pacific*, 439 U.S. at 94, 99 S.Ct. at 402.

Judicial review of NRAB decisions is appropriate only in three specific instances:

The courts shall have jurisdiction to affirm the order of the division or to set aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the finding and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for [1] failure of the division to comply with the requirements of this chapter, [2] for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or [3] for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153 First (q). Unless petitioner's argument is rooted in one of the three exceptions, this court does not have jurisdiction to hear his appeal.

B. *Rule 25 Interpretation by the NRAB*

■ Petitioner contends that the defendant's failure to begin an investigation of the events related to his termination for more than twenty days after it received some form of notice of the incident re-

moves the jurisdiction of the matter from the NRAB, since such time lapse violated the terms of the defendant's collective bargaining agreement with UTU, specifically Rule 25 of that agreement.[4] Therefore, petitioner argues that review by this court is appropriate under section 153 First (q) because the NRAB failed to conform or confine itself to matters within its jurisdiction.

In accordance with the Railway Labor Act, there is a collective bargaining agreement in effect between UTU, which represents Assistant Conductors at Amtrak, and defendant Amtrak. Rule 25 of the Amtrak/UTU Collective Bargaining Agreement provides that "[t]rials on matters which do not involve employees being held out of service will be scheduled to begin within twenty (20) days from the date of management's first knowledge of such matters. If not so scheduled, the charge will become null and void."

The NRAB must make an interpretation of the collective bargaining agreement between petitioner's union and defendant in order to properly confine itself to matters within its jurisdiction. The question for decision by a federal court "is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1195 (7th Cir. 1987). Thus an arbitration award made by the NRAB may be overturned "only if the reviewing court is convinced that [the arbitrator] was not trying to interpret the collective bargaining contract, but that instead he resolved the parties' disputes according to his private notions of justice." *Brotherhood of Locomotive Eng'ring v.*

---

4. Petitioner's argument that the Board did not have jurisdiction to hear this case is based on the fact that more than twenty days elapsed from June 2, 1988 (when the Attendant orally reported the incident to his supervisor) to June 30 (when the initial formal investigation was to take place). Because of various postponements, the investigatory hearing did not actually take place on July 29, 1988. Petitioner does not argue that the July 29 date is problematic under the terms of the bargaining agreement. Rather, both parties treat June 30, 1988 as the relevant date for determining whether the defendant acted within the terms of its collective bargaining agreement with UTU, since this was the first scheduled date of any investigatory hearing for the petitioner.

*Atchison, T. & S.F. R.R.*, 768 F.2d 914, 922 (7th Cir.1985). The NRAB's interpretation of the parties' contract need only be " 'rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.' " *Diamond v. Terminal Ry. Ala. State Docks*, 421 F.2d 228, 233 (5th Cir.1970) (quoting *Brotherhood of R.R. Trainmen v. Central of Ga. Ry. Co.*, 415 F.2d 403, 411–12 (5th Cir. 1969)).

According to the undisputed facts of this case, defendant's Transportation Superintendent was informed in writing of the details of the incident on June 16, 1988. The NRAB held that any notice received prior to that date was not sufficient to begin the 20–day period provided by Rule 25, since the Company could not be charged with knowledge of the "complex and varied" detail of the case other than in writing. Hence the NRAB interpreted the UTU–Amtrak collective bargaining agreement as requiring adequate notice—not simply any form of notice at all.

The NRAB made a reasonable interpretation of the collective bargaining agreement between petitioner's union and defendant. In so doing, it did not fail to confine itself to matters within the scope of its jurisdiction. Because the 20–day period specified in Rule 25 of that agreement had not yet elapsed, the NRAB properly had jurisdiction over the matter. Accordingly, none of the exceptions contained in 45 U.S.C. § 153 First (q) are applicable here, and the findings and order of the NRAB are conclusive and binding on this court. The award of the NRAB is upheld and defendant is entitled to summary judgment on petitioner's first claim.

### C. *Consideration of Petitioner's Disciplinary Record*

Petitioner alleges that the NRAB "exceeded their jurisdiction in issuing an order based in part on [a] disciplinary record which was not properly before it." (Petition to Vacate, paper # 1 in court's docket). Petitioner contends in his initial and amended Memorandum in Opposition to Defendant's Motion for Summary Judgment (pa-

pers # 14 and # 30 in court's docket) that 45 U.S.C. § 153(h) limits the type of disciplinary history the First Division of the NRAB may consider. Petitioner argues that the First Division may only consider the grievances and prior work history of an employee while that employee was subject to its jurisdiction. Petitioner claims that contrary to 45 U.S.C. § 153(h), the First Division considered his disciplinary record related to positions not subject to its jurisdiction in making its award and by doing so exceeded the scope of its jurisdiction, in violation of 45 U.S.C. § 153 First (q).

▮ Petitioner's claim is without merit. The fact that the First Division has jurisdiction to hear disputes involving train and yard service employees of carriers, 45 U.S.C. § 153 First (h), in no way limits the type of evidence it may consider in resolving such disputes. Nothing in the collective bargaining agreement or the Railway Labor Act ("RLA") limits an arbitrator's review of an employee's total employment record.

Moreover, it is well established that an employee's past disciplinary record is a relevant factor to be considered in determining the type and propriety of discipline assessed. Under the Amtrak/UTU collective bargaining agreement, after there has been a finding of liability by the hearing officer, it has been accepted practice to consider an employee's record of discipline in assessing appropriate discipline. *See e.g.* Declaration of John B. Pabst (paper # 13 in court's docket); Public Law Board No. 3516, Award No. 5 (Arb. Yogoda) (1984) (attached to Defendant's Memorandum in Support of Summary Judgment, paper # 9 in court's docket). Upon appeal to the NRAB, "the dictate of common sense and the custom of the railroad unite in recognizing the propriety of taking account of the employee's disciplinary record." *Maddaloni v. Local 808, Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers*, 92 LRRM (BNA) 2467, 2472, 1976 WL 1580 (E.D.N.Y. April 2, 1976). Petitioner's past disciplinary record from his employment in positions other than as a train and yard em-

ployee is certainly relevant to the appropriate level of discipline to be meted out by his employer.

■ Finally, contrary to petitioner's assertions, this evidence was properly before the NRAB. The UTU, on behalf of the petitioner, claimed that the disciplinary hearing officer's decision to terminate petitioner was excessive and appealed the decision to Amtrak. In the course of the internal appeal process, Amtrak provided the UTU with petitioner's disciplinary record to support its decision to terminate petitioner. After the UTU lost that appeal and submitted the dispute to the NRAB, the record before the First Division properly contained petitioner's disciplinary record under both the RLA and NRAB procedures.[5]

Consideration of petitioner's past disciplinary record was not beyond the scope of the First Division's jurisdiction. Accordingly, none of the exceptions contained in 45 U.S.C. § 153 First (q) are applicable here and the findings and order of the NRAB are conclusive and binding on this court. The NRAB's decision is upheld, and defendant is entitled to summary judgment on petitioner's second claim.

IV. Conclusion

This court finds that there is no genuine issue as to any material fact in this case. Therefore, defendant's motion for summary judgment is GRANTED. Plaintiff's motion for a status conference is moot and accordingly is DENIED.

---

5. Both the RLA and the Board's procedures call for, in pertinent part, "disputes [to] be referred ... to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." 45 U.S.C. § 153(i) (the RLA); 29 C.F.R. § 301.2(a) (1990) (the Board procedures). In addition the Board procedures require that "all data submitted in support of [each parties' position] must affirmatively show the same to have been presented to the [other party] and made a part of the particular question in dispute." 29 C.F.R. § 301.5(d) and (e). In his claim to the NRAB, it was the plaintiff who brought up his employment record—his nineteen years of railroad service—as support for his claim that he should be accorded more lenient treatment. See, NRAB Award No. 23966. In light of this claim, it was clearly appropriate for the NRAB to consider plaintiff's disciplinary record, a highly relevant part of an employment record.