621 F.2d 1037
 Debbie RUSSELL, Ernestine Reyes, Dorothy Kirby, Earline
Robinson, Gloria Pullman, Helen Hernandez, as
Individuals and on behalf of all other
tenants similarly situated,
Plaintiffs-Appellants,
v.
Moon LANDRIEU,* in his capacity as Secretary of
Housing and Urban Development, Roland E. Camfield, Jr.,
Individually and in his capacity as Director, Los Angeles,
Area Office, Department of Housing and Urban Development,
and the City of Port Hueneme, Defendants-Appellees.
 No. 77-2078.
 United States Court of Appeals,
Ninth Circuit.
 July 3, 1980.
 
 John Calmore, Berkeley, Cal., for plaintiffs-appellants.
 Sally Warner Watts, Los Angeles, Cal., for defendants-appellees; Eva S. Halbreich, Asst. U. S. Atty., Andrea Sheridan Ordin, U. S. Atty., Los Angeles, Cal., on brief.
 Appeal from the United States District Court for the Central District of Californa.
 Before TRASK, KENNEDY, and ANDERSON, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 The principal issue in this appeal is whether housing project tenants continue to maintain a statutory entitlement to operation of a project for low-income renters notwithstanding foreclosure on the property by the Department of Housing and Urban Development (HUD) and the conveyance to a later purchaser. In dismissing the action and denying plaintiffs' leave to file an amended complaint, the district court ruled that the passage of title from HUD before commencement of this action precluded any relief. We affirm in part and reverse in part.
 
 
 2
 The Seaview Apartments is a 90-unit housing complex located in Port Hueneme, California. It was constructed in 1972 under the nonprofit sponsorship of the Communication Workers of America (CWA). The mortgage was insured by HUD under section 236 of the National Housing Act, 12 U.S.C. § 1715z-1. In 1975 the CWA defaulted on the mortgage payments and the mortgage was assigned to HUD under section 207(g) of the National Housing Act, as incorporated by section 238(a) (2), 12 U.S.C. § 1715z-3(a)(2). HUD acquired the project under foreclosure proceedings on February 5, 1975.
 
 
 3
 On June 30, 1976, HUD sold the Seaview Apartments to the City of Port Hueneme, California, for $1,050,000. It took back a 40-year purchase money mortgage of $976,000 at six percent interest. HUD granted the City a twelve-month deferment on interest and principal payments.
 
 
 4
 The mortgage from the city to HUD incorporated a regulatory agreement between those parties under which HUD authorized an immediate rent increase and restricted future increases to those warranted by actual operating costs. After purchasing the project, the City raised rents by 25 percent, the maximum increase authorized by HUD.
 
 
 5
 Tenants of the Seaview Apartments brought suit naming as defendants the Secretary of HUD, the Director of the Los Angeles Area Office of HUD, and the City of Port Hueneme. The theory of the suit was that the Secretary violated the National Housing Act and the due process clause of the fifth amendment by selling the Seaview Apartments to the City and permitting the City to raise rents without giving tenants prior notice and an opportunity to be heard. The tenants asked that the sale and the proposed rent increases be enjoined. Prior to HUD's responsive pleading, plaintiffs filed a motion for leave to file an amended complaint which alleged further claims for relief. The motion was denied. The district court also granted defendants' motion to dismiss the action with prejudice for failure to state a claim "because at the time the action was filed, there was no title interest in the real property in HUD." Plaintiffs brought this appeal.
 
 Standard of Review
 
 6
 An action should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). We therefore read the complaint in the light most favorable to plaintiffs. McKinney v. DeBord, 507 F.2d 501 (9th Cir. 1974); De Witt v. Pail, 366 F.2d 682 (9th Cir. 1966); 5 C. Wright & A. Miller, Federal Practice & Procedure, § 1357 at 604 (1969).
 
 Standing
 
 7
 The Secretary initially claims that the plaintiffs lack standing to bring the action since their tenancies began after HUD acquired the project in foreclosure. Since the plaintiffs were not tenants when the project was subsidized, the Secretary argues, they suffered no injury by the disposal of the Seaview Apartments without a subsidy and are without standing to raise claims under the due process clause or the National Housing Act. These arguments are without merit. The complaint specifically alleges that the named plaintiffs were residents of the Seaview Apartments before foreclosure and acquisition by HUD and that they did receive the benefits of subsidized housing.[1] At most, the Secretary raises a factual issue which must be resolved in favor of plaintiffs on a motion under Fed.R.Civ.P. 12(b)(6). Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); Reuss v. Balles, 584 F.2d 461, 466 (D.C. Cir.), cert. denied, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978).
 
 
 8
 The Secretary says further that the remedies sought would not cure the injuries alleged. The point appears to be the Secretary's duty extends only to consideration of various alternatives before disposing of HUD-acquired property, without an affirmative obligation to ensure the ultimate disposition of the property as a section 236 project. From this it is said there is no likelihood the injury will be redressed if the relief requested is granted. See Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). We again disagree. The complaint alleges a sufficient likelihood that plaintiffs' injuries will be redressed to make the relief more than speculative. See Simon, supra; Lodge 1858, Am. Fed. of Govt. Employees v. Webb, 580 F.2d 496, 500 (D.C. Cir.), cert. denied, 439 U.S. 927, 99 S.Ct. 311, 58 L.Ed.2d 319 (1978).
 
 Due Process Claim
 
 9
 Plaintiffs claim entitlement to low-income housing even after HUD acquired title to the Seaview Apartments in foreclosure. They argue they were not extended certain procedural protections when HUD decided to (1) sell the Seaview Apartments, (2) authorize an increase in the amount of the maximum rent roll, and (3) approve the rent increases.
 
 
 10
 A property interest in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by an independent source, such as state or federal law. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). See also Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978). In Geneva Tower Tenants Org. v. Federated Mortgage Investors, 504 F.2d 483 (9th Cir. 1974), we held that tenants of a project which is insured and subsidized by HUD at the time that HUD approved a rent increase have a legitimate expectation, created by the National Housing Act, that they would continue to receive the benefits of low-income housing.[2] We held the entitlement was sufficient to invoke the protections of the due process clause. The question before us here is whether plaintiffs' legitimate claim of entitlement continues even after a project is acquired by HUD in foreclosure proceedings. We conclude that it does not. In this situation, the property interest protected by the due process clause continues only so long as a mortgage is insured or held by the Secretary.
 
 
 11
 Section 236 of the National Housing Act authorizes the Secretary to make mortgage assistance payments to a mortgagor under a contract of mortgage insurance. 12 U.S.C. § 1715z-1(a). Such mortgage assistance payments may be made only while the contract of insurance is in effect or while the Secretary holds the mortgage as the assignee of the mortgage lender. 12 U.S.C. § 1715z-1(b). If the project is acquired by HUD, these payments must be suspended. Section 236 does not contain any provision requiring the Secretary to continue to operate such projects as low-income housing nor does it provide any mechanism by which the Secretary may do so. In view of these provisions, the plaintiffs' interest in the continuation of the Seaview Apartments as low-income housing after foreclosure rises to no more than an unilateral expectation which is insufficient to fall within the protection of the due process clause.
 
 
 12
 The Secretary's authority to dispose of HUD-acquired projects is contained in 12 U.S.C. § 1713(l). It states:
 
 
 13
 Notwithstanding any other provisions of law relating to the acquisition, handling, or disposal of real and other property by the United States, the Secretary shall also have power, for the protection of the interests of the General Insurance Fund, to pay out of the General Insurance Fund all expenses or charges in connection with, and to deal with, complete, reconstruct, rent, renovate, modernize, insure, make contracts for the management of, or establish suitable agencies for the management of, or sell for cash or credit or lease in his discretion, any property acquired by him under this section . . . .
 
 
 14
 The Secretary argues that the only condition imposed on the discretion to dispose of HUD-acquired projects is a requirement to protect the insurance fund. The Secretary contends he is under no obligation to consider any other alternatives or to attempt to implement the policies and objectives of the National Housing Act in making the sale. We reject the Secretary's claims of such unbridled discretion, as we have in the context of the payment of operating subsidies under 12 U.S.C. § 1715z-1, Abrams v. Hills, 547 F.2d 1062 (9th Cir. 1976), cert. granted, 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977); motion for reference to district court to consider settlement granted, 439 U.S. 1001, 99 S.Ct. 607, 58 L.Ed.2d 675 (1978), and of rent supplements under 12 U.S.C. § 1701s, Sicuro v. Harris, 597 F.2d 1235 (9th Cir. 1979) (per curiam). We agree with the court in Cole v. Lynn, 389 F.Supp. 99 (D.D.C.1975), that "(t)he Secretary's statutory mandate to seek to better housing conditions for low-income groups does not evaporate when a Section 236 project comes into his hands through foreclosure." Id. at 102 (footnote omitted). In exercising his discretion to dispose of HUD-acquired property, the Secretary must act, whenever possible, in a manner which is consistent with the objectives and priorities of the National Housing Act.[3] Actions taken without consideration of these policies, or in unnecessary conflict with them, will not stand. Pennsylvania v. Lynn, 501 F.2d 848, 855 (D.C. Cir. 1974); Shannon v. HUD, 436 F.2d 809 (3d Cir. 1970).
 
 
 15
 Though the Secretary's discretion in disposing of HUD-acquired property is not unlimited, and though the Secretary must consider alternative methods of disposing of such property which are consistent with the policies and objectives of the National Housing Act, we do not agree with plaintiffs that the Secretary has a statutory obligation to dispose of the property he acquires as low-income housing or that tenants have a legitimate expectation, protected by the fifth amendment, that rents will not be raised and the character of their project will not be altered. The Secretary must consider alternative means of disposing of HUD-acquired property which are consistent with the Act, but there is no warranty, and no reasonable expectation, that such objectives will be obtained. Alexander v. HUD, 555 F.2d 166, 171 (7th Cir. 1977), aff'd, 441 U.S. 39, 99 S.Ct. 1572, 60 L.Ed.2d 28 (1979); Medlin v. Fickling and Walker Development Co., 420 F.Supp. 811, 813 (N.D.Ga.1976). If disposition of the property as low-income housing is not feasible, then HUD has no obligation to dispose of the property in this manner. Tenants for Justice v. Hills, 413 F.Supp. 389, 391 (E.D.Pa.1975). We therefore reject plaintiffs' argument that they were entitled under the fifth amendment to the procedural protections which they claim and affirm the district court's dismissal of the due process claim.
 
 Violation of the National Housing Act
 
 16
 Liberally construed, the complaint alleges that the Secretary acted only to obtain maximum financial return for HUD and that he failed to consider and implement alternatives which would have enabled him to effect the policies and objectives of the National Housing Act. If true, these actions and omissions would constitute an abuse of the Secretary's discretion, and actions not in accordance with law. Judicial relief would be appropriate under the Administrative Procedure Act in such an instance. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); East Oakland-Fruitvale Planning Council v. Rumsfeld, 471 F.2d 524, 533 (9th Cir. 1972); Cole v. Lynn, 389 F.Supp. 99 (D.D.C.1975).
 
 
 17
 In response, the Secretary argues that he did in fact give full consideration to all available options in disposing of the Seaview Apartments, and that sale to the City of Port Hueneme in the manner effected was the optimal means of disposing of the project. Because we must resolve all factual disputes in favor of the plaintiffs in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), we reverse the district court's order dismissing the National Housing Act claim, and remand that claim for further proceedings.
 
 Amended Complaint
 
 18
 The Secretary concedes that the district court abused its discretion by not allowing plaintiffs to amend their complaint as a matter of right before the responsive pleading was served. See Fed.R.Civ.P. 15(a); Nolen v. Fitzharris, 450 F.2d 958 (9th Cir. 1971). In their amended complaint, plaintiffs asserted additional claims for relief under the Administrative Procedure Act, the National Environmental Protection Act, and the Uniform Relocation Act. We intimate no view on the merits of these additional claims. We vacate the district court's order denying leave to amend and remand the case to the district court so that it may reconsider these claims in view of our holding above that a claim was stated under the Administrative Procedure Act.
 
 
 19
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 Carla Hills, in her official capacity, was an original defendant and appellee in this case. Her successor in the Office of Secretary of Housing and Urban Development has been substituted pursuant to Fed.R.App.P. 43(c)(1)
 
 
 [1]
 The Secretary now concedes that at least two of the six named plaintiffs resided in the Seaview Apartments before the foreclosure proceedings
 
 
 [2]
 The First, Second, Third, Sixth, and Seventh Circuits have reached opposite conclusions. See Falzarano v. United States, 607 F.2d 506 (1st Cir. 1979); Hahn v. Gottlieb, 430 F.2d 1243 (1st Cir. 1970); Grace Towers Tenants Ass'n v. Grace Hous. Dev. Fund Co., 538 F.2d 491 (2d Cir. 1976); Langevin v. Chenango Court, Inc., 447 F.2d 296 (2d Cir. 1971); Paulsen v. Coachlight Apartments Co., 507 F.2d 401 (6th Cir. 1974); Harlib v. Lynn, 511 F.2d 51 (7th Cir. 1975); People's Rights Org. v. Bethlehem Assocs., 356 F.Supp. 407 (E.D.Pa.1973), aff'd mem., 487 F.2d 1395 (3d Cir. 1973)
 
 
 [3]
 Title 12 U.S.C. § 1701t provides:
 The Congress affirms the national goal, as set forth in section 1441 of Title 42, of "a decent home and a suitable living environment for every American family".
 The Congress finds that this goal has not been fully realized for many of the Nation's lower income families; that this is a matter of grave national concern; and that there exist in the public and private sectors of the economy the resources and capabilities necessary to the full realization of this goal.
 The Congress declares that in the administration of those housing programs authorized by this Act which are designed to assist families with incomes so low that they could not otherwise decently house themselves, and of other Government programs designed to assist in the provision of housing for such families, the highest priority and emphasis should be given to meeting the housing needs of those families for which the national goal has not become a reality; and in the carrying out of such programs there should be the fullest practicable utilization of the resources and capabilities of private enterprise and of individual self-help techniques.