Hector PORTELA, Emma Portela et al., Plaintiffs-Appellants,

v.

Samuel R. PIERCE, Jr.*, in his official capacity as Secretary of the United States Department of Housing and Urban Development et al., Defendants-Appellees.

No. 79–4002.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 12, 1980.

Decided July 6, 1981.

Rehearing Denied Aug. 10, 1981.

John O. Calmore, Berkeley, Cal., for plaintiffs-appellants.

Donna L. Martin, San Francisco, Cal., argued for defendants-appellees; Betty Wolfe, Sacramento, Cal., on brief.

Before SCHROEDER and FARRIS, Circuit Judges, and HARRIS **, District Judge.

* Carla Hills, in her official capacity, was an original defendant and appellee in this case. The current Secretary of Housing and Urban Development has been substituted pursuant to Fed.R.App.P. 43(c)(1).

** Honorable Oren Harris, Senior U. S. District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

SCHROEDER, Circuit Judge:

This action was brought by tenants of Hacienda Northgate, formerly a low income housing project, to set aside the Department of Housing and Urban Development (HUD)'s disposition of the project. The Sacramento, California project was financed in 1969 under Section 236 of the National Housing Act, 12 U.S.C. § 1715z–1. As a result of mortgage foreclosure proceedings and subsequent foreclosure sale, HUD assumed ownership of Hacienda Northgate in 1972. Three years later, after considering various disposition alternatives, HUD sold the complex to a private partnership insuring the mortgage under Section 221(d)(4) of the National Housing Act, 12 U.S.C. § 1715*l*(d)(4). This sale had the effect of changing the project from low to moderate income housing.

Faced with eviction by the new owner, the low income tenants sought a temporary restraining order and preliminary injunction in August of 1976. The district court found, upon review of the administrative record, that "... HUD did consider, in a meaningful fashion, reasonable alternatives and that the alternative chosen was not an abuse of discretion." However, the court granted a preliminary injunction against the tenants' eviction, directing HUD to provide the tenants procedural due process and to submit a more detailed environmental assessment. The court subsequently approved HUD's receipt of written comments in accordance with its Interim Property Disposition Regulations, 24 C.F.R. § 290.35, as satisfying due process requirements. The Court also approved the special environmental clearance filed by the agency. The court then vacated the preliminary injunction and granted HUD's motion for summary judgment.

Tenants appeal from the summary judgment on three grounds. First, they contend that the Secretary did not properly evaluate alternative dispositions of the project, and thus violated the statutory obligation to provide tenants with decent, affordable housing as expressed in the National Housing Acts, 42 U.S.C. § 1441a; 12 U.S.C. § 1701t. Second, they allege that HUD failed to meet the requirements of the National Environmental Protection Act (NEPA), 42 U.S.C. § 4332(2)(C), because it did not file a formal Environmental Impact Statement. Third, they argue that the submission of written comments subsequent to the actual property disposition denied them procedural due process.

## EVALUATION OF ALTERNATIVE DISPOSITIONS OF THE PROJECT

Appellants contend that, following acquisition of the project by foreclosure, the Secretary did not adequately consider alternatives to the sale of the project as middle income housing. More specifically, appellants contend that the Secretary failed to consider ways of maintaining the project as low income housing, and was guided solely by a desire to protect the General Insurance Fund.[1]

This Court in *Russell v. Landrieu*, 621 F.2d 1037 (9th Cir. 1980) held that HUD cannot act solely on the basis of protection of the Fund, and that the Secretary must act "in a manner which is consistent with the objectives and priorities of the National Housing Act." *Id.* at 1041. The Secretary was required to consider and implement alternatives to effect the policies and objectives of the National Housing Acts.[2] *Id.;*

1. Title 12 U.S.C. § 1713(*l*) provides:
   Notwithstanding any other provisions of law relating to the acquisition, handling, or disposal of real and other property by the United States, the Secretary shall also have power, *for the protection of the interests of the General Insurance Fund* to pay out of the General Insurance Fund all expenses or charges in connection with, and to deal with, complete, reconstruct, rent, renovate, modernize, insure, make contracts for the man-

   agement of, or establish suitable agencies for the management of, or sell for cash or credit or lease in his discretion, any property acquired by him under this section ... (Emphasis added)

2. Title 42 U.S.C. § 1441a(a) provides in relevant part:
   The Congress finds that the supply of the Nation's housing is not increasing rapidly enough to meet the national housing goal,

*Accord, Pennsylvania v. Lynn,* 501 F.2d 848 (D.C.Cir.1974) (agency decision to discontinue funding upheld because based on program-related, not exclusively fiscal factors); *Shannon v. HUD,* 436 F.2d 809 (3rd Cir. 1970) (agency decision reversed because concentrated solely on land use considerations); *Tenants for Justice v. Hills,* 413 F.Supp. 389 (E.D.Pa.1975) (tenants granted interim injunctive relief because agency decision was based on "virtually irrational" economic calculation). In *Russell* we held that judicial relief would be appropriate under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* for any abuse of discretion. *Russell,* 621 F.2d at 1042. However, the Court expressly stated that there is no requirement that the Secretary maintain a low income project as low income housing. "[I]f disposition of the property as low income housing is not feasible, then HUD has no obligation to dispose of the property in this manner." *Id.* at 1041.

In this case, the district court found the Secretary considered various options, including: sale as a Section 236 (12 U.S.C. § 1715z–1) project which would provide rental and cooperative housing for lower income families; sale as individual townhouses under Section 235 (12 U.S.C. § 1715z(b)) which would provide subsidized mortgage insurance for low and moderate income home buyers; and conveyance to the Sacramento Housing and Redevelopment Agency (SHRA), with funds for rehabilitation. The only specific alternative

which the appellants claim was not considered was the use of funds under the Section 8, *Lower Income Housing* Assistance Program of Title II of the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f. Yet the record reflects that the contemplated sale to the SHRA was contingent upon availability of such funds. This sale was thwarted by the unavailability of additional Section 8 contract authority for Sacramento. Further, regulations were not promulgated to authorize the use of Section 8 funds in connection with the disposition of HUD-owned, multi-family properties until several months after the sale of this project. 41 Fed.Reg. 13603 (March 31, 1976).

Appellants rely upon *Cole v. Lynn,* 389 F.Supp. 99 (D.D.C.1975) in which the court found that HUD had not considered certain specific alternatives. That is not the case here. Moreover, the project in *Cole* was considerably more viable as a low income housing project than this project. At the time of repossession by HUD, Hacienda Northgate was overcrowded, lacked proper recreational facilities for children, and was beset by vandalism; only 29 percent of the tenants were paying rent. By the time of sale, occupancy had been reduced to 14 percent and, as the district court noted, the project had "failed" as low income housing. Unlike *Cole v. Lynn, supra,* the agency's consideration of alternatives here, as well as the reasons for their rejection, were apparent in the record of this case.

established in the Housing Act of 1949, of the "realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family." The Congress reaffirms this national housing goal and determines that it can be substantially achieved within the next decade
. . .

Title 12 U.S.C. § 1701t provides:
The Congress affirms the national goal, as set forth in section 1441 of Title 42, of "a decent home and a suitable living environment for every American family".
The Congress finds that this goal has not been fully realized for many of the Nation's lower income families; that this is a matter of grave national concern; and that there exist in the public and private sectors of the economy the resources and capabilities

necessary to the full realization of this goal.
The Congress declares that in the administration of those housing programs authorized by this Act which are designed to assist families with incomes so low that they could not otherwise decently house themselves, and of other Government programs designed to assist in the provision of housing for such families, the highest priority and emphasis should be given to meeting the housing needs of those families for which the national goal has not become a reality; and in the carrying out of such programs there should be the fullest practicable utilization of the resources and capabilities of private enterprise and of individual self-help techniques.

## THE ENVIRONMENTAL CLEARANCE STATEMENT

■ Appellants challenge the failure of the agency to prepare a full Environmental Impact Statement (EIS), arguing in essence that HUD should have documented the need for low income housing in the Sacramento area. Under the guidelines established by HUD to isolate those projects which may require a formal EIS, the disposition of Hacienda Northgate only required a "normal environmental clearance" rather than a full EIS because less that 200 units were affected.[3] The district court, nevertheless, initially found that the statement which had been supplied was inadequate because the section dealing with physical impact and tenant relocation was too conclusory to allow meaningful review. *See Sadler v. 218 Housing Corp.*, 417 F.Supp. 348 (N.D.Ga.1976). The court therefore required a fuller statement in the form of a "special environmental clearance". This statement was provided. With respect to physical impact, the statement concluded that conversion of the project to middle income would have a positive impact and would contribute to the elimination of urban blight. With respect to relocation, the statement indicated that only eighteen low income tenants remained at the project at the time of the sale, and that ten would not have to relocate. It concluded that the burden placed on the tenants and the community was offset by the benefit to the community through revitalizing the project as middle income housing. That report was accepted by the district court after it reviewed an affidavit by the owner of the project stating that the low income tenants who remained in the facility and had not been relocated were receiving Section 8 subsidies, and therefore had not been adversely affected.

■ We agree with the appellants that, in determining whether the agency properly declined to prepare a full EIS, we must consider whether the agency's action was reasonable. *City and County of San Francisco v. United States*, 615 F.2d 498 (9th Cir. 1980); *City of Davis v. Coleman*, 521 F.2d 661 (9th Cir. 1975). Compliance with the agency's own guidelines, while not dispositive, is some evidence of the reasonableness of the agency's action. *New Hope Community Association v. Harris*, No. 79–453–Civ–5 (E.D.N.C., decided Mar. 1981); *see Hiram Clarke Civic Club, Inc. v. Lynn*, 476 F.2d 421 (5th Cir. 1973). In this case, the district court required action which went beyond the agency's guidelines and found that the agency eventually adequately considered both the physical and human impact of the conversion of the project. Other courts considering similar tenant objections to loss of low income housing have required a showing that rehabilitation as low cost housing was not feasible and that tenants would be relocated, but have not required the filing of a full EIS. *Sadler*, 417 F.Supp. at 357; *Jones v. U. S. Department of Housing*, 68 F.R.D. 60 (E.D.La.1975). The district court properly upheld the agency's action in this case after assuring itself that all of the individuals directly affected by the action were relocated.

## DUE PROCESS

■ Appellants finally contend that there should have been a hearing, after the foreclosure but prior to the sale, to ensure HUD's consideration of the tenants' interests. Appellants rely upon *Geneva Towers Tenants Organization v. Federated Mortgage Investors*, 504 F.2d 483 (9th Cir. 1974), which held that before increasing rents of a project insured and subsidized by HUD, the agency should, as a matter of due process, have permitted submission of written complaints by the tenants. In this case, the claim is that due process required a hearing after the HUD mortgage had been foreclosed. This Court has held, however, that

---

**3.** Under HUD's guidelines, a proposed public housing project of 500 units or more is required to be the subject of an EIS. A project of 200 or more units is required to be the subject of a "special clearance." Projects of less than 200 units receive "normal environmental clearance." HUD Circular 1390.1, 38 Fed.Reg. 19188, as amended, 39 Fed.Reg. 38923, Appendix A–1. Hacienda Northgate was a 175 unit project.

upon foreclosure, due process no longer protects the interests of tenants in the continuation of their status as tenants in low income housing. *Russell*, 621 F.2d at 1040.

Here the district court enjoined eviction to permit the tenants to submit written comments. Those comments were considered by the court before it vacated the injunction and granted summary judgment for the government. The district court acted with fairness in this regard.

Affirmed.