Catherine DANIELS, et al., Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT, et al., Defendants.

No. C–1–79–469.

United States District Court, S. D. Ohio, W. D.

July 15, 1981.

Stanley A. Hirtle, John E. Schrider, Jr., Legal Aid Society of Cincinnati, Cincinnati, Ohio, for plaintiffs.

James C. Cissell, U. S. Atty., Cincinnati, Ohio, Daniel J. Metcalfe, Dept. of Justice, Washington, D. C., for defendants.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT AND DENYING MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF

CARL B. RUBIN, Chief Judge.

This matter is before the Court on cross motions for summary judgment filed by the parties herein. There being no factual dispute, counsel have agreed that this matter may be disposed of upon such motions. Memoranda and exhibits in support of their respective positions have been filed by the parties.

The factual background is as follows. In accordance with the National Housing Act, 12 U.S.C. § 1713, et seq., the Secretary of Housing & Urban Development (hereafter HUD) may from time to time acquire ownership rights in rental real estate. In some instances, HUD may acquire title by assignment of mortgage, by default or by foreclosure. Under certain circumstances, HUD may enter and manage property assigned to it as a mortgagee in possession (MIP). See 12 U.S.C. § 1713(k). However the property may have been acquired, it is not disputed by the parties that HUD controls a substantial number of rental units in multi-family properties in the Cincinnati, Ohio area. It is not disputed that many of these rental properties are unoccupied. The central issue in this matter concerns the obligation of HUD to make such units available on the rental market.

As background, it is advisable to consider certain of the statutes that appear to be applicable to this issue. In 1968, Congress adopted a policy statement now contained in 12 U.S.C. § 1701t. This section provides in part as follows:

"The Congress affirms the national goal as set forth in Section 1441 of Title 22 of (a) 'a decent home and a suitable living environment for every American family'
. . .

The Congress declares that in the administration of those housing programs authorized by this act which are designed to assist families with income so low that they could not otherwise decently house themselves and of other government programs designed to assist in the provision of housing for such families, the highest priority and emphasis should be given to meeting the housing needs of those families for which the national goal has not become a reality and in carrying out such programs, there should be the fullest, practicable utilization of the resources and capability of private enterprise and of individual self-help techniques."

In 1978, a policy determination was stated by Congress in 12 U.S.C. § 1701z–11. That section provides in part as follows:

"(a) It is the policy of the United States that the Secretary of Housing & Urban Development, hereinafter referred to as the Secretary, shall manage and dispose of multi-family housing projects which are owned by the Secretary in a manner consistent with this chapter and this section. The purpose of the property management and disposition program of the Department of Housing & Urban Development shall be to manage and dispose of projects in a manner which will protect the financial interests of the federal government and be less costly to the federal government than other reasonable alternatives by which the Secretary can further the goals of (1) preserving the housing units so that they can remain available to and affordable by low and moderate income families . . . (5) minimizing the need to demolish projects. The Secretary, in determining the manner by which a project shall be managed or disposed of, may balance competing goals relating to individual projects in a manner which will further the achievement of the overall purpose of this section . . . (c) Except where the Secretary has determined on a case by case basis that it would be clearly inappropriate given the manner by which an individual project is to be managed and disposed of

pursuant to subsection a of this section, the Secretary shall seek to (1) maintain all occupied multi-family housing projects owned by the Secretary in a decent, safe and sanitary condition and (2) to the greatest extent possible, maintain full occupancy in all multi-family housing projects owned by the Secretary."

Essentially, the question presented to the Court is whether or not HUD must seek to achieve 100% occupancy of its acquired property at all times. Plaintiff has not asserted that the Secretary has abused his discretion in removing specific properties from the rental market and in the absence of such allegation, the Court must confine itself to the basic question of duties imposed upon the Secretary under the statutes above quoted.

This appears to be a question of first impression. Neither the extensive research of counsel as demonstrated by their comprehensive briefs, nor the independent research of the Court has disclosed any disposition of this precise question. The Court must therefore look for guidance in determination of analogous situations.

It may be pertinent to point out in this summer of 1981, that the Supreme Court has admonished the federal courts from substituting its wisdom for that of the Executive or Congress. See *Dames & Moore v. Regan,* —— U.S. ——, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981), *Rostker Director of Selective Service v. Goldberg,* —— U.S. ——, 101 S.Ct. 2646, 68 L.Ed.2d 478 (1981).

Persuasive to the appropriate disposition of this matter are decisions of the United States Courts of Appeals for the First, Seventh and Ninth Circuits. More than persuasive is a decision of the United States Court of Appeals for the Sixth Circuit. None of these cases, however, is directly on point. The closest is *Alexander v. U. S. Department of Housing & Urban Development,* 555 F.2d 166 (7th Cir. 1977). *Alexander* dealt with a HUD determination to vacate a public housing project. Speaking for the Court, the Honorable William J. Campbell made the following statement:

The stated Congressional purpose of providing a 'decent home and suitable living environment for every American family', 42 U.S.C. § 1441, expresses general Congressional objectives in instituting public housing programs. We fail to see how these objectives can be interpreted to impose upon HUD or its agents an absolute fixed obligation to maintain suitable dwellings. Moreover, like many declarations of Congressional policy, 42 U.S.C. § 1441 sets forth broad future objectives on a grand scale which are to be accomplished over a period of many years. *The establishment of Congressional objectives while certainly affording benefits to those eligible to partake of programs designed to attain these objectives is not tantamount to a warranty that such objectives will be attained.* (emphasis added)

The United States Court of Appeals for the First Circuit in *Perez v. United States,* 594 F.2d 280 (1979), likewise considered a question unrelated to the matter at hand but indicated a view of the obligations of HUD in relation to the statement of Congressional policy. The *Perez* case was brought under the Federal Tort Claim Act and dealt with a question of safety in a Puerto Rican public housing project where HUD acted as a mortgage guarantor. At page 287, the following appears:

Plaintiffs have not pointed to any legal doctrine under which HUD was required to establish safety standards for the projects it funded and we can think of none[11]. At several places in their brief, plaintiffs make reference to the fact that HUD was 'concerned' with providing 'decent, safe and sanitary' housing for the poor. This expression 'decent, safe and sanitary' ... appeared in the United States Housing Act of 1937 ... the Act declared it to be the 'policy' of the United States to 'assist' the states in remedying unsafe and unsanitary housing conditions and the 'shortage of decent, safe and sanitary dwellings' ... The low income housing program vests control over the design, construction and maintenance of federally funded projects with local hous-

ing authorities... Congress has given no indication that in creating this program, it intended to burden HUD with a statutory duty enforceable of the suits of individual tenants to insure that all HUD funded housing was hazard free....

The United States Court of Appeals for the Ninth Circuit in *Russell v. Landrieu, Secretary of HUD*, 621 F.2d 1037 (1980) in another unrelated matter, had occasion to consider the obligations of the Secretary in accordance with the policy statements of Congress. The *Russell* case involved proposed rent increases in a low-income housing project after foreclosure and sale by HUD. In a decision generally unfavorable to HUD, the Court pointed out the following:

"Though the Secretary's discretion in disposing of HUD acquired property is not unlimited and though the Secretary must consider alternative methods of disposing of such property which are consistent of the policies and objectives of the National Housing Act, we do not agree with plaintiffs that the Secretary has a statutory obligation to dispose of the property he acquires as low-income housing or that tenants have a legitimate expectation protected by the Fifth Amendment that rent will not be raised and the character of their project will not be altered. The Secretary must consider alternative means of disposing of HUD acquired property which are consistent with the Act but there is no warranty and no reasonable expectation that such objectives will be obtained." *Russell, supra* at 1041.

There is not a unanimity among the Circuits as to the relationship of the Secretary to the stated policies of Congress. The foregoing citations all suggest a large area of discretion. The United States Court of Appeals for the District of Columbia does not agree. In *Commonwealth of Pennsylvania v. Lynn, Secretary of HUD*, 501 F.2d 848 (1974), the Court was called upon to consider decisions by the Secretary to suspend certain low-income housing programs. The circuit court reversed a decision of the district court that the Secretary had authority to suspend such low-income housing projects where they were not achieving their Congressionally intended purpose.

Significant, however, to the matter at hand is a determination by that Court in regard to 42 U.S.C. § 1441. The Court specifically stated:

This statute is not precatory. HUD is obligated to follow these policies. Action taken without consideration of them or in conflict with them will not stand ... *although there is, of course, broad discretion in the agency to choose between alternative methods of achieving the National Housing objectives....* *Lynn, supra* at 855. (emphasis added)

The foregoing decisions are not binding upon this Court. They are cited primarily to note the uniformity of reasoning that has impelled those circuits to conclude that the Secretary has wide discretion in implementing the policies set forth by Congress in the various housing acts.

Binding upon this Court are decisions of the United States Court of Appeals for the Sixth Circuit. While there is no precise case in point, a determination by that Court appears to align it more with the views of the First, Seventh and Ninth Circuits than that expressed by the District of Columbia Circuit.

In *Federal Property Management Corp. v. Harris*, 603 F.2d 1226 (1979), the United States Court of Appeals for the Sixth Circuit considered HUD's policy of "setting off" rent supplement payment due owners of certain projects against those owners' delinquent mortgages. The Court concluded that the Secretary had broad discretion in his efforts to achieve National Housing objectives. Specifically, the Court stated:

Congress recognized that HUD's ability to achieve the national housing goal was limited by the enormity of the problem and that long range objectives had to be considered... The Housing Acts do not obligate the Secretary to guarantee that all federally funded housing projects will be continually maintained ... HUD must use available funds to achieve the

ultimate goal of a decent home for every American family and cannot focus exclusively on a few projects.

If the reasoning behind the Agency's action is logical and in this case we have concluded that it is, that action must be allowed to stand. That is true even if an alternative course of action would also be logical since the Agency *must be allowed broad discretion to choose between alternative methods of achieving the national housing objective....* (emphasis added) *Federal Property Mgt. Corp., supra* at 1230, 1231.

The defendant in its memorandum has set forth the status of the rental units it controls in the City of Cincinnati. Of some 1700 units, either owned or controlled, approximately 550 were vacant. (Defendant's Memorandum in Support of Summary Judgment at page 7.) The question of whether any one of these units should have been returned to the rental market has not been presented to the Court. Such a determination would not rest upon the obligation of the Secretary under the National Housing Acts but would rather be directed to the discretion vested in the Secretary. The Court in the *Federal Property Management* case considered this type of problem. The Court observed:

> Even if we disagreed with the Secretary's decision, we could not substitute our judgment for hers unless we found her decision was arbitrary, capricious or an abuse of discretion or otherwise not in accordance with law. The standard set forth in 5 U.S.C. § 706(2)(a) ... A Court may not concern itself with the wisdom of an agency's action ... if the reason behind the agency's action is logical ... that action must be allowed to stand. That is true even if an alternative course of action would also be logical since the agency must be allowed broad discretion to choose between alternative methods of achieving the National Housing objectives.

*Federal Property Management Corp., supra* at 1230, 1231.

In view of the foregoing, the Court concludes that while it might be appropriate for plaintiffs or any other person in the posture of plaintiffs to question the determination of the Secretary as to any unit or project, such question cannot be determined in the absence of a showing that the Secretary committed an abuse of discretion as set forth in the Administrative Procedure Act.

The sole question presented to this Court is whether the Secretary must maintain rental units under his control in a posture of 100% available for occupancy. The Court finds that such obligation is not imposed upon the Secretary and accordingly, the motion for summary judgment of the plaintiffs is hereby DENIED and the motion for summary judgment of the defendant is hereby GRANTED.

IT IS SO ORDERED.