**EASTERN AIR LINES, INC.,**
Petitioner,

v.

**AIR LINE STEWARDS AND STEWARD-ESSES ASSOCIATION LOCAL 550, TRANSPORT WORKERS UNION, AFL–CIO, Respondent.**

No. 74–238–Civ–JLK.

United States District Court,
S. D. Florida,
Miami Division.

Nov. 19, 1974.

William G. Bell, Jr., Eastern Air Lines, Inc., Miami, Fla., Lloyd Sutter, Gambrell, Russell Killorin, Wade & Forbes, Atlanta, Ga., for petitioner.

Alan E. Greenfield, Dubbin, Schiff, Berkman & Dubbin, Miami, Fla., O'Donnell & Schwartz, New York City, for respondent.

## MEMORANDUM OPINION AND ORDER

JAMES LAWRENCE KING, District Judge.

This is an action brought by Eastern Air Lines to set aside the decision of

an arbitration panel which awarded longevity credit for pay purposes to former Caribair Air Lines flight attendants who were transferred to Eastern's payroll following the merger of the two airlines.[1] The questions presented concern the capacity in which the panel was convened, and whether the panel exceeded its jurisdiction.

For the most part, the facts are stipulated. The Air Line Stewards and Stewardesses Association (ALSSA) is certified by the National Mediation Board as the exclusive collective bargaining representative of the flight attendants employed by Eastern and those formerly employed by Caribair. Eastern and ALSSA entered into a collective bargaining agreement, known as the Eastern Flight Attendant Basic Agreement, on April 26, 1973.

In October of 1973, Eastern and Caribair requested the Civil Aeronautics Board's approval of an interim management agreement and an acquisition agreement. The interim management agreement was approved pending a decision on the acquisition. Eventually, the CAB approved Eastern's acquisition of certain assets of Caribair. Yet the approval was subject to Eastern's acceptance of labor protective provisions requiring that former Caribair flight attendants, employed by Eastern, be paid no less than what they were earning with Caribair during a specified test period. The acquisition became effective on May 15, 1973.

Thereafter, Eastern and ALSSA entered into negotiations concerning the terms and conditions under which the Caribair flight attendants would be integrated into Eastern's flight attendant classification. ALSSA took the position that the former Caribair employees should receive full credit for past service with Caribair with respect to seniority, sick leave, occupational injury leave, pass privileges, vacations, retirement benefits, group insurance benefits and pay. With the exception of the proposed past service credit for pay purposes, Eastern agreed. The airline insisted that the former Caribair flight attendants should be treated as new employees for pay purposes.

In order not to delay the implementation of the matters in agreement, and to resolve the remaining disagreement, Eastern and ALSSA executed two agreements. The document, dated July 24, 1973, prescribed the terms and conditions for integrating Caribair flight attendants into the Eastern system as to which there was agreement. The second document, which was actually executed simultaneously with the other agreement, provided in pertinent part:

It was the position of the Association that the Eastern Flight Attendant Basic Agreement entitles Caribair Flight Attendants to Eastern rates of pay with full past service credit for pay longevity effective May 15, 1973.

. . . . . .

With respect to whether or not the Eastern Flight Attendant Agreement entitles Caribair Flight Attendants to past service credit for pay purposes on December 2, 1973, we have agreed to the following:

1. ALSSA may submit the question to final and binding arbitration at any time prior to December 2, 1973.

. . . . . .

2. Except for the question of whether or not the Eastern Flight Attendant Agreement requires past service credit for pay longevity on December 2, 1973, the Agreement signed July 24, 1973 shall be fully effective in accordance with the terms set forth therein.

On November 19, 1973, an arbitration was held before a five-member board, consisting of two union representatives two company representatives, and a neu-

---

1. The jurisdiction of the court is predicated upon 28 U.S.C. §§ 1331 and 1337, and 45 U.S.C. §§ 184 and 153. See International Association of Machinists v. Central Airlines, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963).

tral member. The panel awarded the former Caribair flight attendants longevity credit for pay purposes.

■ The threshold issue concerns the capacity in which the arbitration board was convened. Eastern contends that the arbitrators sat as the Eastern Air Lines Flight Attendant System Board of Adjustment which is only empowered to interpret the collective bargaining agreement.[2] ALSSA claims that the panel was a Special Board of Adjustment, or a specially appointed arbitration board, either of which has the authority to supplement the agreement.[3]

The most reliable guide to the resolution of the issue is the July 18th agreement pursuant to which the arbitration was held. The wording of the document, particularly the consistent use of the present tense is significant. The agreement describes the union's position as "the Eastern Flight Attendant Basic Agreement *entitles* Caribair Flight Attendants to Eastern rates of pay with full past service credit." (Emphasis added) The issue to be arbitrated is stated as "whether or not the Eastern Flight Attendant Agreement *entitles* Caribair Flight Attendants to past service credit." (Emphasis added) At another point, the document describes the issue in essentially the same terms except that the verb, "requires," is used. The parties' use of the present tense in each instance reflects an intent that the arbitration panel interpret and apply the present terms of the collective bargaining agreement. The wording of the July 18th agreement thus indicates that the board was not commissioned to

arbitrate a supplemental amendment to the Eastern Basic Agreement.

By limiting the function of the panel to the interpretation and application of the collective bargaining agreement, the parties to the July 18th agreement described a board whose function is the same as the carrier's system board of adjustment. Since Eastern and ALSSA are by no means newcomers to the field of labor relations, it is quite difficult to find that they did not appreciate the significance of the language employed to express their agreement. Consequently, the court finds that the panel was convened as the Eastern Air Lines System Board of Adjustment to interpret, not supplement, the collective bargaining agreement.

■ In reviewing the award of a carrier's system board of adjustment,[4] the court does not sit as a super arbitration board. "It is the arbitrator's construction [of the collective bargaining agreement] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1962). As a result, the scope of judicial review is limited. The board's award will only be deemed to have exceeded its jurisdiction when it is "so unfounded in reason and fact, so unconnected with the wording and purpose of the collective bargaining agreement as to 'manifest an infidelity to the obligation of the arbitrator.'"

2. See International Association of Machinists and Aerospace Workers v. Northeast Airlines, Inc., 473 F.2d 549 (1st Cir. 1972); cf. Andrews v. Louisville & Nashville Railroad Company, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972).

3. Cf. Detroit & Toledo Shore Line Railroad Co. v. United Transportation Union, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969).

4. Although the panel in its opinion and award referred to itself as a "Special Board of Adjustment," the name should not be the controlling factor in determining whether the panel's award exceeded its jurisdiction. Regardless of the name, the strong national policy of deferring to labor arbitration boards militates in favor of upholding the award if an application of the appropriate standard of review reveals that the board properly performed its function.

Brotherhood of Railroad Trainmen v. Central of Georgia Ry. Co., 415 F.2d 403, 415 (5th Cir. 1969) *quoting from* United Steelworkers of America, *supra* 363 U.S. at 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

■ A textual examination of the board's opinion and award, in light of the above standard, demonstrates that the panel strayed from its appointed task of interpreting the collective bargaining agreement. The report discloses that the board looked instead to the course of the parties' merger negotiations "to determine what they had in mind with respect to applying longevity to the pay rates of the merged Caribair Flight Attendants." Relevant to the parties' intent, the panel considered: other mergers, including those to which Eastern was a party; a statement of a Senior Eastern Vice-President to Caribair employees; the so-called "climate" of the airlines industry; and the need to avoid treating unequally members of the same labor peer group. The opinion's only reference to the Eastern Basic Agreement was to the effect that it did not exclude any class of flight attendants. On the basis of such factors, the board concluded:

> that throughout their negotiations the parties did intend to include longevity pay credit; that this is in no way inconsistent with any provision in the Eastern Agreement, and that, therefore, it shall be included.

The opinion thus reveals that the arbitration panel focused its inquiry, and indeed based its decision, on what it deemed the parties' intent during the merger negotiations.

In addition, the specific language of the board's conclusion illustrates the extent to which the award was unconnected to the terms of the collective bargaining agreement. The determination that longevity pay credit for former Caribair employees "shall be included" indicates that the panel added a provision to the Eastern Flight Attendant Basic Agreement. The fact that the board amended the agreement is fatally inconsistent with the notion that its decision was grounded on an interpretation of the existing terms of the contract.

However, assuming that the board's reliance on the merger negotiations was somehow connected to a reading of the collective bargaining agreement, the board's determination of the parties' intent is unfounded in fact. The undisputed history of the negotiations reveals that the longevity pay issue was the principal stumbling block in the way of the successful completion of the merger. Eastern's willingness to abide by the board's interpretation of the collective bargaining agreement certainly is not probative of its intent to grant past service credit for pay purposes. The airline's consistent opposition to such credit effectively undermines the board's conclusion that *both* parties "did intend to include longevity pay credit."

■ The board's misplaced reliance on the parties' intent during the merger negotiations, coupled with its failure to interpret the collective bargaining agreement, "manifest an infidelity to the obligation of the arbitrator." While the arbitrator is free to "look for guidance from many sources, . . . his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of America, supra* 363 U.S. at 597, 80 S.Ct. at 1361. Here, the arbitration board was distracted from the contract. It never really addressed itself to the stipulated issue of "whether or not the Eastern Flight Attendant Agreement entitles Caribair Flight Attendants to past service credit for pay purposes."[5]

5. Despite the parties' explicit statement of the issue in their July 18th agreement, the board viewed the issue as
   whether or not former Caribair Flight Attendants shall have their pay calculated on the basis of the longevity (service) date when they were employed by Caribair or as of the effective date of the merger of Eastern Air Lines and Caribair with former Caribair Flight Attendants being treated in this respect as any newly hired Eastern Flight Attendants.

Accordingly, the panel's award must be set aside, and the matter must be remanded to the board for further consideration.[6]

Conspicuously absent from the board's statement of the issue is any reference to the terms of the Eastern Flight Attendant Basic Agreement.

6. Nothing in this opinion should be construed as reflecting on the merits of the pay longevity question before the board.