**EASTERN AIR LINES, INC.,**
**Plaintiff-Appellee,**

v.

**TRANSPORT WORKERS UNION,**
**AFL–CIO, LOCAL 553,**
**Defendant-Appellant.**

**No. 76–3711.**

United States Court of Appeals,
Fifth Circuit.

Sept. 15, 1978.

See also, D.C., 384 F.Supp. 1300.

Alan E. Greenfield, Miami, Fla., O'Donnell & Schwartz, Asher W. Schwartz, New York City, for defendant-appellant.

William G. Bell, Jr., W. Glen Harlan, Eastern Air Lines, Inc., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and THORNBERRY and CLARK, Circuit Judges.

JOHN R. BROWN, Chief Judge:

We have before us an appeal from an order by the District Court setting aside an arbitration award. Defendant-appellant Transport Workers Union (TWU) claims that the District Court failed to honor established limits governing Court review of arbitration matters and thus exceeded its jurisdiction under the Railway Labor Act, 45 U.S.C.A. § 153(q). Finding that the District Court indeed went beyond a mere examination of whether the panel confined itself to matters within its jurisdiction, we reverse.[1]

This entire dispute arises from Eastern Air Lines' acquisition of Caribair Air Lines and its negotiations with TWU[2] regarding

---

1. Thus we have to consider the jurisdiction of both the arbitration panel and the District Court. The jurisdiction of the former is drawn by the question submitted by the parties; 45 U.S.C.A. § 153(q) governs the limits of judicial review.

2. At all times material to this proceeding, both Eastern and Caribair flight attendants have been represented by appellant Air Line Steward and Stewardess Association (ALSSA), Local 550, Transport Workers Union, AFL–CIO (TWU), or its successor, Local 553, Transport Workers Union, AFL–CIO.

integration of Caribair flight attendants into Eastern's Flight Attendant classification. TWU asserted that Eastern should give former Caribair attendants full pay and employee benefit credit for past service with Caribair. Eastern agreed to give full credit for most benefits but maintained that for pay purposes, former Caribair attendants should be treated as new employees. Each side insisted that its position rested upon the terms of the basic collective bargaining agreement.[3]

After further negotiations failed to resolve the dispute, the parties decided to give Caribair attendants an interim ten percent pay raise effective from May 15, 1973 —the date Eastern completed its acquisition—to December 2, 1973.[4] They additionally agreed (1) that TWU could submit to final and binding arbitration the question "whether or not the Eastern Flight Attendant Agreement entitles Caribair Flight Attendants to past service credit for pay purposes on December 2, 1973," and (2) that during arbitration the agreement regarding interim pay rate would "not prejudice the position of either party nor . . . be

used by either party in support of [its] position. . . . "[5]

Pursuant to these agreements, TWU filed a grievance with the Eastern-TWU System Board of Adjustment. A panel of five— two representatives of Eastern, two of TWU, and a fifth neutral chairman agreed upon by the parties—met to decide the question submitted and found in favor of TWU.[6] Eastern then filed a petition for judicial review, asking the District Court to set aside the decision on the ground that the Board had exceeded its jurisdiction by going beyond the *actual* terms of the collective bargaining contract to decide instead what the parties *should have* agreed. According to Eastern, to fairly determine what the parties actually did agree to in the contract, the Board would have to construe and apply Section 2B,[7] which defines "Active Service," and Section 7,[8] which specifies rates of pay. Since the neutral arbitrator's opinion did not do this, Eastern asserted that the Board's decision must necessarily have disregarded those provisions. The District Court agreed and, setting aside the

3. This refers to the Eastern Flight Attendants Agreement, dated April 26, 1973.

4. This agreement was recorded in a letter dated July 24, 1973. The letter also included final arrangements the parties had made with respect to other employee benefits.

5. These agreements were recorded in a letter dated July 18, 1973, which refers to and describes the agreement of July 24 and defines the dispute between the parties. According to the precise language of the July 18 writing, "[t]he Letter of Agreement dated July 24, 1973, shall not prejudice the position of either party . . . ." (Emphasis added).

6. The neutral chairman submitted a written opinion in which he defined the problem before the Board as "determin[ing] *what the parties had in mind* with respect to applying longevity to the pay rates of the merged Caribair Flight Attendants." (Emphasis added). He concluded "that throughout *their negotiations* the parties did intend to include longevity pay credit; that this is in no way inconsistent with any provision in the Eastern Agreement, and that, therefore, it shall be included." On appeal, the District Court examined this conclusion and found that "[t]he opinion . . . reveals that the arbitration panel focused its inquiry,

and indeed based its decision, on what it deemed the parties' intent during the merger negotiations." *Eastern Air Lines, Inc. v. Air Line Stewards & Stewardesses Ass'n*, S.D.Fla., 1974, 384 F.Supp. 1300, 1303.

7. **SECTION 2—DEFINITIONS**
As used in this Agreement:
   B. "Active Service" shall mean the time during which a Flight Attendant is available for flight duty, not including time on leave of absence in excess of thirty (30) days, but including time on sick leave and vacation.

8. **SECTION 7—RATES OF PAY**
   A. Each Flight Attendant shall be paid a minimum monthly salary in accordance with his-her accredited active service as defined in Section 2-B as follows:

| | |
|---|---|
| 1st 6 months | $503 |
| 2nd 6 months | 525 |
| 2nd year | 558 |
| 3rd year | 583 |
| 4th year | 680 |
| 5th year | 702 |
| 6th year | 716 |
| 7th year | 741 |
| 8th year | 766 |
| 9th year | 781 |

award, remanded the matter for further consideration.[9]

The Board reassembled to rehear the issue. Again it found that Caribair attendants should receive full pay credit for past service, and again Eastern petitioned for review. The District Court found the Board's award still "unconnected with the *wording* and purpose of the collective bargaining contract" and set it aside a second time. TWU then appealed to this Court.[10]

The sole issue before us is whether, as TWU claims, the District Court substituted its judgment for that of the System Board. If it did, our prior decisions in this area mandate reversal.[11] The Railway Labor Act allows only limited judicial review of arbitration decisions—its range is "among the narrowest known to the law." *Diamond v. Terminal Ry. Alabama State Docks*, 5 Cir., 1970, 421 F.2d 228, 233. A Court may set aside an order of the Board only on one of three specific grounds: (1) failure of the Board to comply with the Act, (2) fraud or corruption, or (3) failure of the order to conform or confine itself to matters within the Board's jurisdiction. *Diamond, supra*, at 233, citing 45 U.S.C.A. § 153(q). Absent one of these, the award is binding upon the parties and the findings and order are conclusive in Court. *Id.* Unless we find the Board's interpretation to be "wholly baseless and completely without reason," its decision must stand. *Gunther*

*v. San Diego & Arizona Eastern Ry. Co.*, 1965, 382 U.S. 257, 261, 86 S.Ct. 368, 371, 15 L.Ed.2d 308, 311.

Eastern maintains that even according to this strict standard of review the District Court properly set aside the Board's award. According to Eastern, the panel (1) acted without considering the collective bargaining agreement, (2) improperly relied on the Letter of Agreement between the parties,[12] and (3) made effective review impossible by failing to discuss the evidence or interpret the agreement. A close examination of the arbitrator's opinion proves these contentions to be incorrect. First, the opinion cited both Section 2B and Section 7 as "Pertinent Contract Provisions." In his "Decision," the arbitrator found that Section 7 provides pay longevity credits to Eastern Flight Attendants and concluded that Caribair attendants are entitled to such credits. Since Section 7 by its own terms incorporates Section 2B,[13] we cannot agree with Eastern that the Board failed or refused to consider those portions of the collective bargaining contract. Nor, considering our limited scope of review, can we say that it was without an arguable basis for the conclusions reached.

Secondly, we reject the argument that the Board improperly based its decision on the Letter of Agreement between the parties.[14] Eastern contends that because

---

9. The District Court found that the "Board's misplaced reliance on the parties' intent during the merger negotiations, coupled with its failure to interpret the collective bargaining agreement, 'manifest an infidelity to the obligation of the arbitrator.'" *Eastern Air Lines, Inc., supra*, 384 F.Supp. at 1303.

TWU did not appeal this remand order. Instead, the same neutral arbitrator again met with two representatives of each party and issued a second decision in favor of TWU. On appeal, the same District Judge set aside the award and remanded the matter to the Board. It is only the second remand order that is before this Court.

10. Since only the second remand order is before this Court, we will neither address the merits of the first, nor determine whether the second award followed the District Court's instructions on remand. Instead, we will simply consider whether the District Court acted with-

in its jurisdictional limits in setting aside the second award.

11. *E. g., Diamond v. Terminal Ry. Alabama State Docks*, 5 Cir., 1970, 421 F.2d 228; *Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co.*, 5 Cir., 1969, 415 F.2d 403, *cert. denied*, 1970, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500.

12. *See* note 5, *supra*.

13. *See* Section 7, note 8, *supra*.

14. *See* note 5, *supra*. Although we give full consideration to this contention, we must note that Eastern failed to raise it in its appellate brief. In fact, Eastern appeared not to have been so concerned about this point when in its brief it described the letter, saying that

Eastern agreed that in any arbitration regarding the pay credit issue, Eastern would not ·

the parties agreed that neither would use the letter in support of its position, the opinion's reference to the agreement warrants setting aside the panel's award. Although the "Decision" did quote the letter—in concluding that "[i]f as of December 2, 1973, 'Caribair Flight Attendants shall be considered Eastern Flight Attendants,' . . . Caribair attendants are entitled to such credits"—it was merely citing an undisputed, historical fact. The conditional language of the statement perhaps causes some confusion, but unnecessarily so. Because it *is* uncontroverted that Caribair flight attendants were considered Eastern flight attendants on December 2, 1973, the arbitrator would have been perfectly correct in substituting the word "since" for "if." Such a substitution would have made it clear that the quoted portion was not essential to the panel's conclusion.

■ Finally, we cannot accept Eastern's contention that the Board prevented effective review by its failure to outline specifically the reasoning it followed in reaching its conclusion. If we were reviewing a decision of a court or an administrative agency, Eastern's objection might be well taken.[15] Arbitrators, however, "have no obligation to the Court to give their reasons for an award." *Steelworkers v. Enterprise Corp.*, 1960, 363 U.S. 593, 597–98, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428. Although "an arbitrator is confined to interpretation and application of the collective bargaining agreement, . . . [a] mere ambiguity in [his or her] opinion * * * which permits the inference that the arbitrator may have exceeded [his or her] authority, is not a reason for refusing to enforce the award." *Id.*

Since we cannot find that the Board's award—although arguably vague—was " 'without foundation in reason or fact,' " our decision in *Diamond, supra,* 421 F.2d at 233, compels us to reverse the District Court and reinstate the award. In doing so, we express no opinion regarding the substantive correctness of the Board's conclusion. We merely hold that the panel acted within the scope of its jurisdiction.

REVERSED.

use the agreement regarding the rate of pay during the period May 15, 1973 to December 2, 1973 as an admission by TWU that the ex-Caribair Flight attendants were not entitled to full credit for pay purposes.
Appellee's Brief at 5–6.

15. Eastern cites two Fifth Circuit decisions (*Echols v. Sullivan*, 5 Cir., 1975, 521 F.2d 206; *Hydrospace-Challenger, Inc. v. Tracor/Mas, Inc.*, 5 Cir., 1975, 520 F.2d 1030), and three from other Circuits (*City of Lawrence, Mass. v. C.A.B.*, 1 Cir., 1965, 343 F.2d 583; *Northeast*

*Airlines, Inc. v. C.A.B.*, 1 Cir., 1964, 331 F.2d 579; *Braniff Airways, Inc. v. C.A.B.*, 1962, 113 U.S.App.D.C. 132, 306 F.2d 739), to support its contention that the Board must spell out the basis for its decision so that the reviewing court can properly perform its function. These cases, however, are not relevant to the present situation. Since none of them concerned judicial review of an arbitration award, they did not employ the narrow standard of review that we are governed by here.