Clarence NORMAN, Plaintiff,

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, DISTRICT 100, affiliated with the AFL–CIO, and Eastern Airlines, Inc., a Delaware corporation registered to do business in the State of Florida, Defendants.**

**No. 83–1901–Civ.**

United States District Court,
S.D. Florida,
Miami Division.

Nov. 29, 1985.

Roger G. Stanway, Hollywood, Fla., for plaintiff.

Dorian G. Damoorgian, Manners, Tucker, Carillo, & Damoorgian, P.A., Miami, Fla., for defendant International Ass'n of Machinists, etc.

Carmen Leon, Miami, for defendant Eastern Airlines, Inc.

## MEMORANDUM OPINION GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

ARONOVITZ, District Judge.

THIS CAUSE came before the Court for a hearing on the parties' cross-motions for summary judgment, more specifically, Defendant INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS ("UNION"), DISTRICT 100's Motion for Summary Judgment (D.N. 44), Defendant EASTERN AIRLINES ("EASTERN"), INC.'s Motion for Summary Judgment (D.N. 49), and Plaintiff CLARENCE NORMAN's Cross-Motion for Summary Judgment (D.N. 52). Counsel for all parties appeared and presented their views at the hearing held October 29, 1985. The Court, having heard argument and considered the motions, the supporting and opposing memoranda filed thereto, the agreed upon statement of facts, the pertinent portions of the record, the applicable law, and being otherwise fully advised in the premises, it is thereupon

ORDERED AND ADJUDGED that Defendant UNION's Motion for Summary Judgment (D.N. 44) and Defendant EASTERN's Motion for Summary Judgment (D.N. 49) be, and the same are, hereby GRANTED. It is

FURTHER ORDERED AND ADJUDGED that Plaintiff's Cross-Motion for Summary Judgment (D.N. 52) be, and the same is, hereby DENIED.

This is an action for damages and reinstatement of employment due to the alleged unlawful discharge of Plaintiff by his employer Defendant EASTERN. The Amended Complaint also alleges breach by the Defendant UNION of its duty of fair representation. Jurisdiction of the cause is predicated upon the Railway Labor Act, 45 U.S.C. § 151, *et. seq.*

### The Undisputed Facts

Essentially, the material facts are not in dispute. The parties have agreed in substantial part to the Statement of Undisputed Facts which appears at pages 2 through 10 of the Defendant UNION's Motion for Summary Judgment (D.N. 44). (The parties' accession to this statement of facts appears at D.N. 55.) At the hearing on October 29, 1985, Counsel for Plaintiff an-

nounced that a few of the "undisputed" facts were indeed in dispute. Counsel for Plaintiff admitted that these were "minor" points and Counsel for Defendant UNION conceded these "facts" for purposes of resolving the instant case on the pending cross-motions for summary judgment. The Court does not deem these minor facts material in any event. The following pertinent facts which are not in dispute have been summarized from Defendant UNION's Statement of Undisputed Facts (D.N. 44). All references to the record support for these facts have therefore been omitted below. The Court would adopt and incorporate as though fully set forth herein all citations to the record as they appear in Defendant UNION's Statement.

Plaintiff was a mechanic in Defendant EASTERN's welding shop. On September 2, 1982, Plaintiff reported to work with alcohol on his breath. He was observed as being unable to perform the duties attendant to his job properly. As a result of this incident, the Chairman of the Defendant UNION contacted Plaintiff and discussions between the parties resulted in the Plaintiff's decision to enroll himself as an inpatient at an alcohol recovery center in a local hospital. On September 7, 1982, while he was being treated for alcohol abuse at the hospital, Plaintiff received a letter of termination from EASTERN based on the incident of September 2, 1982. Defendant UNION interceded at this juncture and filed a grievance on behalf of the Plaintiff for wrongful discharge under the governing Collective Bargaining Agreement.

On October 9, 1982, Plaintiff completed the alcohol recovery program and enrolled in weekly group therapy sessions as well as the local chapter of Alcoholics Anonymous. At this time, he was advised by the Defendant UNION that he was eligible for a reinstatement program with his former employer, Defendant EASTERN. Subsequently, an Article 18 investigation ensued in compliance with the Collective Bargaining Agreement and at a meeting on October 17, 1982, a "Return to Work Agreement" was hammered out between the Plaintiff through his UNION representatives and Defendant EASTERN representatives. At the meeting, EASTERN representatives stated that Plaintiff would not be treated differently from any other employee with respect to violation of attendance policies. Pursuant to the parties' verbal agreement of October 17th regarding Plaintiff's return to work, the parties met the next day to execute a written document hereinafter referred to as the Return to Work Agreement. At the October 18th meeting, the UNION representatives questioned the language contained at Paragraph 6 of the Return to Work Agreement. They were told by Defendant EASTERN representatives once again that Plaintiff would be treated like any other employee with respect to attendance policy violations.

Paragraph 6 of the Return to Work Agreement states:

> Employee acknowledges and accepts responsibility that should he violate any rule or regulation concerning attendance or alcohol abuse set forth for Employees of the Company, Employee will be terminated without recourse to any provision set forth in Article 17, 18, or 19 of the EAL/IAMAW (UNION) Agreement ...

On or about October 17, 1982, Plaintiff returned to his former job as an airline mechanic in EASTERN's welding shop in accordance with and subject to the terms of the Return to Work Agreement. On November 2, 1982, Plaintiff called in sick and did not report to work. On November 21, 1982, EASTERN reported Plaintiff as being absent from work. The November 21st "absence" has been explained away by Plaintiff as an administrative error and neither Defendant has disputed this contention. Thereafter, on November 22nd, 23rd, 24th and 28th, Plaintiff was absent from work. According to Plaintiff, and once again Defendants have not disputed this, the entire four day period was covered by a note from Plaintiff's doctor attesting to Plaintiff's inability to work due to an injury. On December 2, 1982, Plaintiff received a memorandum from his supervisors advising him that his failure to report for

work on November 28, 1982, was a violation of the Return to Work Agreement. On December 16, 1982, an EASTERN supervisor wrote a second memorandum regarding Plaintiff's unexcused absences and incidents of tardiness. The second memorandum cited six days of unexcused absences and two incidents of tardiness and further warned that failure to abide by the Return to Work Agreement would result in Plaintiff's immediate termination pursuant to the parties' agreement. On the date that the second memorandum was written, December 16, 1982, Plaintiff was absent from work. As a result of this absence, EASTERN issued a letter of termination on December 20, 1982. The letter cites seven "unexcused" absences and two incidents of tardiness. Plaintiff's counsel disputes the number of absences which are deemed unexcused by EASTERN, but as the instant memorandum opinion illustrates, the number of absences, whether excused or unexcused, is not a material fact for the purposes of this Court's review.

Soon after he received his letter of termination from Defendant EASTERN, Plaintiff notified Defendant UNION that he had been fired. Plaintiff met with the UNION Chairman in order to file a grievance and discuss the facts attendant to his termination. Pursuant to Article 18 of the Collective Bargaining Agreement, Defendants EASTERN and UNION scheduled a joint investigation. The Shop Steward and the Chairman met to discuss the facts and circumstances of Plaintiff's grievance and the UNION Chairman reviewed Plaintiff's attendance record for the period from October 17, to December 16, 1982. On January 14, 1983, an Article 18 investigation was conducted. Plaintiff testified that pursuant to the Return to Work Agreement, all absences and incidents of tardiness had to be alcohol related before disciplinary action could be taken against Plaintiff. The UNION Chairman argued that Plaintiff was not in violation of the Return to Work Agreement inasmuch as Plaintiff's absences were not alcohol related.

Upon completion of the Article 18 investigation, EASTERN Labor Relations Representative Clifford Murphy sustained the termination of Plaintiff's employment. An arbitration hearing was scheduled thereafter for March 7, 1983. On that date, Plaintiff's arbitration hearing was held before the Systems Board of Adjustment ("SBA") joint panel chaired by neutral member Fred Blackwell in accordance with Article 19 of the Collective Bargaining Agreement. During the arbitration hearing, the UNION Chairman sought to establish that Paragraph 6 of the Return to Work Agreement was intended by the parties to be limited to alcohol related absences and incidents of tardiness. On March 11, 1983, after apparently considering all of the evidence presented by all sides, the SBA issued an opinion affirming the EASTERN decision to terminate Plaintiff and denying Plaintiff's grievance. It is from this SBA opinion that the instant litigation stems.

In early July of 1983, Plaintiff filed his complaint in state circuit court and thereafter, on July 28, 1983, pursuant to a joint petition filed by the parties, the Cause was removed to this District Court. Plaintiff's Amended Complaint (D.N. 15) alleges four counts. They seek (1) to set aside the decision of the SBA arbitration panel as being arbitrary and without basis in reason or fact, (2) damages for breach of the Collective Bargaining Agreement against Defendant EASTERN, (3) damages for breach of the duty of fair representation against Defendant UNION, and (4) damages for collusion and conspiracy between both defendants. Plaintiff also seeks to be reinstated in his job as an airline mechanic in EASTERN's welding shop.

*The Motions for Summary Judgment*

The parties argue three points in their respective motions for summary judgment and responses. The three issues for this Court's determination are: (1) whether Defendant UNION's actions in processing Plaintiff's grievance were executed in a good faith, non-arbitrary and non-discriminatory manner; (2) whether the SBA award is in compliance with the Railway

Labor Act, devoid of fraud, and confined to matters within the SBA's jurisdiction, thereby limiting the Court's powers of review; and (3) whether the instant action is time barred by the statute of limitations. Each of these issues is treated separately below.

1. *Whether Defendant UNION's Actions in Processing Plaintiff's Grievance Were Done in a Good Faith, Non-Arbitrary and Non-Discriminatory Manner*

This issue speaks directly to the charges of breach of duty of fair representation and conspiracy leveled against Defendant UNION. As to the duty of fair representation, there is some dispute by the parties as to what standard is to be employed in judging a claim for its breach. It is clear however, that *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), is the first seminal decision on the issue. That case articulated the standard as follows:

> A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.

386 U.S. at 190, 87 S.Ct. at 916–17. Defendant UNION maintains that this standard has been altered by the subsequent United States Supreme Court decision of *Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971) ("Lockridge"). Defendant argues that *Lockridge* increased the burden on the aggrieved employee and points to the following language in support of its contention:

> For such a claim to be made out, Lockridge must have proved "arbitrary or bad faith conduct on the part of the Union." ... There must be "substantial evidence of fraud, deceitful action or dishonest conduct."

403 U.S. at 299, 91 S.Ct. at 1924.

At first blush, this language could be construed as implementation of a heavier burden on the aggrieved employee since it seems to require deceitful or dishonest conduct on the part of the UNION. However, this Court does not read *Lockridge* as imposing a different, more burdensome standard than the one articulated in *Vaca, supra*. The Court adopts the reasoning used by the Seventh Circuit Court of Appeals in *Baldini v. Local Union No. 1095*, 581 F.2d 145, 150–151, n. 5 (7th Cir.1978). The *Baldini* Court reconciled the two cases thusly:

> Under *Vaca v. Sipes, supra*, ... a union breaches its duty of fair representation when its conduct towards the member is "arbitrary, discriminatory, or in bad faith." It is noted that the standard is disjunctive. *Vaca* expressly rejected an argument that only obvious breaches such as discrimination or hostile treatment would be actionable.[5]

---

[5] Occasional sentences lifted from their context might make it seem that invidious hostility or some sort of malice is always required, *see e.g.,* ... *Lockridge* ..., but the treatment of the issue in *Hines v. Anchor Motor Freight, Inc.,* (96 S.Ct. 1048 [96 S.Ct. 1048, 47 L.Ed.2d 231] (1976) ), ... leaves little doubt that such has not become the law. Nor do we think a fair reading of *Lockridge* ... really supports (the defendant Union's) argument.

The standard enunciated and utilized by the Eleventh Circuit Court of Appeals in *Harris v. Schwerman Trucking, Co.,* 668 F.2d 1204 (11th Cir.1982), appears to combine the language found in *Vaca* and *Lockridge*. In that case, the standard for evaluating a breach of duty of fair representation claim against a union was articulated as follows:

> In order to establish that the union has breached its duty of fair representation it must be shown that the union's handling of the grievance was either "arbitrary, discriminatory or in bad faith, as, for example when it arbitrarily ignore(s) a meritorius grievance or process(es) it in (a) perfunctory fashion."

668 F.2d at 1206. It would seem then that something less than discrimination or hostile treatment could be actionable under the Eleventh Circuit's interpretation of what is required to establish a breach of the duty of fair representation. The *Harris* decision

states that "the union is allowed considerable latitude in its representation of employees" and that union representatives are "not held to strict standards of trial advocacy." 668 F.2d at 1206. Moreover, *Harris* reaffirms what both parties contend, namely that neither negligence nor a mistake in judgment will support a claim that the union acted in an arbitrary and perfunctory manner. In any event, the Eleventh Circuit decision affirmed Defendant's contention that the standard for establishing such a breach is a very tough one. Under any standard advanced, whether it be the supposed lesser one stated in *Vaca* or the tougher one purportedly set forth in *Lockridge*, the Court holds that the Plaintiff in the instant case has failed to establish a claim for breach of the duty of fair representation by the Defendant UNION.

■ Plaintiff alleges that the UNION breached its duty of fair representation by failing to obtain clarification of the settlement agreement (specifically, Paragraph 6 of the Return to Work Agreement). He claims that the UNION should have insisted upon defining absences in the written agreement as those that are alcohol related. He further claims that the Defendant UNION failed to apprise him of his rights under the Return to Work Agreement at the time that the agreement was executed. There are however, no allegations in the Amended Complaint that the UNION breached its duty of fair representation in either the handling of Plaintiff's grievance or the preparation and presentation of Plaintiff's case before the SBA.

■ Moreover, the record clearly demonstrates and Plaintiff does not dispute that the UNION represented the Plaintiff at all stages of the grievance process, including (1) attending all meetings, (2) involving the shop steward and all other appropriate officials of the UNION who generally handle employees with alcohol related problems, and (3) generally following all steps of the grievance procedure up through and including the execution of the Return to Work Agreement. Further, Plaintiff admits in his deposition that he was satisfied with

the UNION's representation of him up through the time he returned to work pursuant to the Return to Work Agreement (Deposition of Plaintiff CLARENCE NORMAN at pp. 43–44). These record facts all indicate that the UNION fulfilled its duty of fair representation. This Court finds that the UNION represented Plaintiff in good faith and that there was no breach of the duty of fair representation notwithstanding the SBA's finding that "the evidence as a whole does not support the Union's proposition and instead persuades that such a limitation was not in fact agreed to by the parties." (SBA Opinion at p. 11.) This SBA statement does not negate this Court's holding because a review of the entire record demonstrates that at all times the UNION acted in good faith and in accordance with its duty of fair representation. At best, the UNION's handling of the Paragraph 6 dispute was ineffective and perhaps constituted negligence. Ineffectiveness and negligence do not constitute a breach of the UNION's duty, however.

Plaintiff argues in its cross motion for summary judgment that the UNION acted arbitrarily and without reason or judgment. Plaintiff points to the Plaintiff's deposition wherein he states that he notified the UNION representatives that he did not want to sign the Return to Work Agreement unless the agreement was clarified to reflect that absenteeism based on alcohol abuse was the only ground for termination. Plaintiff maintains that he thought that the proper clarification was inserted into the Return to Work Agreement. According to Plaintiff, the UNION's alleged failure to secure this understanding caused and eventually resulted in Plaintiff's termination, since he was absent from work for reasons other than alcohol related problems. This failure, Plaintiff contends, constitutes handling his grievance in a perfunctory manner and hence, is a breach of the UNION's duty.

In *Harris v. Schwerman, supra,* the Eleventh Circuit stated that in order to be actionable, the claim for "perfunctory"

handling of a claim "requires a demonstration that the union ignored the grievance, inexplicably failed to take some required step or gave the grievance merely cursory attention." 668 F.2d at 1207. Under the set of stipulated facts or under the "facts" expressed in Plaintiff's deposition, the Defendant UNION's actions do not constitute the reckless disregard or grossly deficient conduct necessary to establish a breach of duty on the part of the UNION. Accordingly, the Court holds that Plaintiff did not establish and the record does not reflect that Defendant UNION breached its duty of fair representation in the handling of either Plaintiff's grievance or the preparation and presentation of Plaintiff's case before the SBA. Under *Vaca*, the most lenient of standards found in the caselaw, Plaintiff did not fulfill his burden of establishing any conduct which could conceivably be construed as a breach by Defendant UNION.

2. *Whether the SBA Award is in Compliance with the Railway Labor Act, Devoid of Fraud, and Confined to Matters within the SBA's Jurisdiction*

Plaintiff seeks to have this Court overturn the SBA award which was rendered in Defendant EASTERN's favor. The SBA opinion affirms Defendant EASTERN's termination of Plaintiff and denies Plaintiff's grievance. The grounds for overturning an SBA award are for the most part articulated in Title 45, United States Code, Section 153 First (q), which provides in pertinent part:

The Court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform or confine itself, to

matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

Several courts have added other grounds for overturning or setting aside an SBA award. Beginning with the Supreme Court decision of *Gunther v. San Diego & Arizona Eastern Railway Company*, 382 U.S. 257, 261, 86 S.Ct. 368, 370–71, 15 L.Ed.2d 308 (1965), and continuing with a line of Fifth Circuit cases, it has been well established that an arbitrator's award under the Railway Labor Act must be set aside if the SBA's award is "wholly baseless and completely without reason." In *Brotherhood of Railroad Trainmen v. Central of Georgia Railway*, 415 F.2d 403 (5th Cir.1969), the Court elaborated on the "narrow" standard of review accorded to federal district courts when faced with determining whether or not to affirm or overturn an SBA award. In that case, the Court equated the *Gunther* "wholly baseless and without reason" standard with language found in the Legislative History of the Railway Labor Act provision regarding district court review of an SBA award. That language articulates the standard as whether or not the Board's interpretation was "actually and undisputably without foundation in reason or fact." 415 F.2d at 412.

*Diamond v. Terminal Railway Alabama State Docks*, 421 F.2d 228 (5th Cir. 1970), explained the standard even further. That decision stated:

The federal courts do not sit as super arbitration tribunals in suits brought to enforce awards of the Adjustment Board. They may not substitute their judgments for those of the Board's division. They need not inquire whether substantial evidence supports the Board's award. Under the Railway Labor Act, ... the range of judicial review in enforcement cases is among the narrowest known to the law.

421 F.2d at 233.

■ Finally, the decision of *Eastern Airlines, Inc. v. Transport Workers Union*, 580 F.2d 169 (5th Cir.1978), is instructive.

There, the trial court was reversed when it set aside an arbitration award under the Railway Labor Act. In that case, the Court held that the trial judge exceeded the bounds of his reviewing powers when he set aside the award because the award was "not without foundation in reason or fact." 580 F.2d at 173. The Fifth Circuit stated:

> Arbitrators, however, "have no obligation to the Court to give their reasons for an award." ... Although "an arbitrator is confined to interpretation and application of the collective bargaining agreement, ... (a) mere ambiguity in (his or her) opinion * * * which permits the inference that the arbitrator may have exceeded (his or her) authority, is not a reason for refusing to enforce the award." Since we cannot find that the Board's award—although arguably vague—was " 'without foundation in reason or fact,' " our decision in *Diamond, supra*, 421 F.2d at 233, compels us to reverse the District Court and reinstate the award. In doing so, we express no opinion regarding the substantive correctness of the Board's conclusion. We merely hold that the panel acted within the scope of its jurisdiction.

580 F.2d at 173. Given these precedents, if there is any basis whatsoever for sustaining the instant SBA award and opinion, that is, if there is any foundation in reason or fact for the Board's award, then the Court must affirm the decision to terminate Plaintiff. The Court cannot substitute its judgment for that of the Board's. Under the above-cited statute and caselaw, this Court can evaluate only whether or not the Board's opinion was baseless, conceived by fraud, or outside the scope of the SBA's jurisdiction.

Plaintiff maintains that the SBA's decision is arbitrary, capricious, unreasonable and prejudicial to him. Moreover, according to Plaintiff, the effect of the SBA's decision amounts to a denial of due process. The basis for Plaintiff's assertion of capriciousness can be found in his allegation that "the arbitrator appeared to have reached the conclusion that Plaintiff had violated the sudden death agreement without regard to the testimony of the Plaintiff and two independent witnesses." (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (D.N. 54) at p. 15). Curiously enough, Plaintiff then quotes the following passage from the SBA opinion:

> We note here that while we do not doubt the sincerity of the Union witness who testified about the talk with Management that preceded the signing of the agreement, and while we recognize that the Union participants and Grievant may have felt that this talk resulted in a concession by Management to limit attendance violations to alcohol related violations, the evidence as a whole simply does not support the Union's propositions and instead persuades that such a limitation was not in fact agreed to by the parties.

Rather than demonstrating Plaintiff's point that the SBA cursorily analyzed the Paragraph 6 dispute without considering the evidence, this excerpt shows that the Plaintiff's evidence was considered and rejected in the face of counterveiling evidence. From this excerpt alone, the Court could find that Plaintiff's characterization of the opinion as baseless is simply without merit.

■ Defendant EASTERN argues, and indeed the record reflects, that the testimony presented by Plaintiff and Defendant EASTERN was conflicting. It appears from the SBA opinion that the SBA, after reviewing all of the evidence, found the company's witnesses to be more credible and accordingly, upheld the discharge. The fact that Plaintiff may have desired a different interpretation of the evidence before the SBA falls far short of the necessary showing that the award was not based in reason or fact. When the Collective Bargaining Agreement provides for settlement of disputes by arbitration, as is the case here, the Court may not review the merits of the grievance.

■ Plaintiff also seeks this Court's review of the parol evidence pertaining to Paragraph 6 of the Return to Work Agree-

ment. This is an improper request given the limited scope of the Court's reviewing powers under the cited Railway Labor Act provision and the pertinent caselaw. In fact, the SBA did consider the parol evidence regarding the alleged intentions of the parties. The foregoing excerpt attests to such consideration. Taken as a whole, the SBA opinion clearly has some basis in fact and reason. The Court cannot substitute its interpretation of the Return to Work Agreement and the evidence surrounding its execution. Plaintiff has not presented any evidence which would justify the overturning of the SBA opinion. This Court, must therefore AFFIRM the SBA award because it is in compliance with the Railway Labor Act and the award is devoid of fraud and confined to matters within the SBA's jurisdiction.

3. *Whether the Instant Action is Time Barred by the Applicable Statute of Limitations*

■■■ The final issue concerns Defendant's contention that the instant action is time barred because it was not filed within the 90 period allowed under the Florida Arbitration Code. The 90 day requirement under the Florida Arbitration Code is not applicable to the case at bar. Instead, the applicable limitations period for bringing suit on an arbitration decision rendered under the Railway Labor Act is six months. This was made clear in the Supreme Court decision of *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). This Court has applied the six month limitations period articulated in *DelCostello* in the case of *Leslie Eisenberg v. Trans World Airlines, et. al.*, Case No. 83–2681–Civ-Marcus (formerly Aronovitz) ("Eisenberg"). Although *Eisenberg* involved alleged ERISA violations, that case like the one at bar, was brought pursuant to the Railway Labor Act. Applying the *DelCostello* statute of limitations period to the case at bar, it is clear that Plaintiff's lawsuit was timely filed. The SBA award was rendered on March 11, 1983. The instant action was filed less than four months later on July 8,

1983. This case was therefore brought within the six month time period allowed under *DelCostello*. Accordingly, the action is not, contrary to Defendants' assertion, time barred.

### Conclusion

As to the first issue, the Court holds that under the undisputed facts, Plaintiff has not demonstrated a basis for finding the Defendant UNION liable for a breach of the duty of fair representation. Under any standard, whether it be the more lenient one enunciated in *Vaca v. Sipes, supra,* or the alleged tougher one Defendants assert pursuant to *Lockridge, supra,* Plaintiff has not fulfilled his burden of demonstrating that the Defendant UNION breached its duty of fair representation. The record facts indicate that Defendant UNION's actions in processing Plaintiff's grievance were done in a good faith, non-arbitrary and non-discriminatory manner. With respect to the second issue, the record facts establish that the SBA award was in compliance with the Railway Labor Act and confined to matters within the SBA's jurisdiction. Further, Plaintiff has not demonstrated that the subject SBA award was tainted with fraud. As such, pursuant to the *Gunther* "wholly baseless and without reason" standard, the Court must affirm and uphold the SBA award. The first two issues then, are resolved in favor of Defendants. The third issue, regarding the statute of limitations, is resolved in favor of Plaintiff. Under the *DelCostello* six month statute of limitations, the instant case was timely filed. Still resolution of the third issue in favor of Plaintiff does not alter the ultimate outcome of the matter. Final Summary Judgment shall be entered in favor of both Defendants in accordance with the ruling herein.

DONE AND ORDERED in Chambers at Miami, Florida, this 29 day of November, 1985.